(Decided 13th June, 1889.)

---

## MELVIN C. GARLITZ *vs.* STATE OF MARYLAND.

*Qualification of Jurors—When judgment of Court below should not be Disturbed by Court of Review—Admissibility of Evidence—Remarks of Counsel in the Presence of the Jury—Duty of the Court—Evidence in Rebuttal.*

All that can be required of a juror, to render him competent, is that he shall be without bias or prejudice for or against the accused, and that his mind is free to hear and impartially consider the evidence, and to render a verdict thereon without regard to any former opinion or impression existing in his mind, formed upon rumor or newspaper reports. Whenever it is shown that such is the state of mind of the juror he should be held to be competent.

Where a person summoned as a juror stated upon his *voir dire* that he had formed an opinion in regard to the case based upon the newspapers and rumor which it would require evidence to remove, but that notwithstanding such previous opinion formed by him he felt confident he could give the prisoner a perfectly

Garlitz *vs.* State.

fair and impartial trial, upon the evidence, and upon that alone, such previous opinion does not render him incompetent.

Where the question of the competency of talesmen has been fully investigated by the Court below, and the question is one of mixed fact and law, the judgment of that Court ought not to be disturbed by a Court of Review, unless there be clear and manifest error to the prejudice of the prisoner.

A person was on trial for the murder of his wife. After proof of the homicide, the State proved by the sister of the deceased wife, that on the Saturday night preceding the killing, the prisoner made an assault upon his wife in one of the streets of the town, and drew his knife and declared that he had a mind to stab her to the heart, but desisted; and then offered to prove by the same witness, that on the next evening the parties met by appointment with the prisoner at the 'house of the prisoner's brother; and that, when the wife and her sister were about to start for home, the prisoner proposed that they should take a different route from that by which they came, and return by an unfrequented and little used path over the mountain, which they declined to do. On objection by the prisoner to the admissibility of this evidence, it was HELD:

That in connection with what had transpired on the day preceding, and the killing two days after at a place of meeting designated by the prisoner himself, this evidence was admissible to go to the jury, to be considered with all the other circumstances reflecting upon the fact of premeditation.

It is not the particular disposition or temperament of the accused, but the nature of the alleged provocation, as that may be supposed to affect and influence ordinary minds, that may be considered in mitigation of crime.

Where counsel in the presence of the jury indulge in reckless assertions as to the law applicable to the case on trial, while arguing a question of evidence to the Judge, the latter has the right to give expression of his full and emphatic dissent from the unwarrantable contention of the former; and it may not be unfrequently his imperative duty to exercise that right in a very positive and emphatic manner.

A prisoner on trial for the murder of his wife became a witness himself, and stated that he was so shocked and overcome by a confession of infidelity made by his wife that he was seized by a

frenzy or distraction of mind that deprived him for the moment of all reason and control of himself, and it was while in this state of mind that he committed the act of killing. On his cross-examination it was proposed to be shown by him, that while a married man, and living apart from his wife, he maintained improper relations with other women, and that such relations in one instance at least were of a criminal nature. On objection, it was HELD:

1st. That the question was admissible for the purpose of showing the prisoner's estimate and appreciation of the marital relation and fidelity, and the improbability that he was shocked and overcome in the manner described in his testimony in chief.

2nd. That his relations to his wife and to other women were circumstances to be considered as pertinent to the defence attempted to be maintained by his testimony in chief.

The State is not required to anticipate what will be the statements of the prisoner on the witness stand, and if he makes statements at variance with former admissions or statements made by him, such former admissions or statements are admissible in rebuttal for the purpose of contradiction and impeachment.

APPEAL from the Circuit Court for Alleghany County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*Ferdinand Williams,* for the appellant.

*David W. Sloan, State's Attorney for Alleghany County,* and *Wm. Pinkney Whyte, Attorney-General,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The prisoner, the appellant in this case, was indicted for the wilful and deliberate murder of his wife, in one of the public streets of the City of Cumberland, on the

26th day of March, 1889, where she had met him by his own request. He pleaded "not guilty," and was tried by a jury, and found guilty of murder in the first degree.

In the course of the trial the counsel for the prisoner took fourteen bills of exception; some to rulings with respect to the qualification of jurors, and others as to questions of the admissibility or non-admissibility of evidence.

The first four bills of exception present questions arising upon the empannelling the jury; the exceptions being taken to rulings upon challenges for cause interposed by the prisoner.

It appears, by the first exception, that all the jurors of the regular panel, upon being sworn on their *voir dire*, proved to be disqualified; and of a large number of talesmen summoned, and sworn on their *voir dire*, seven jurors were qualified and sworn. Hiram H. Little, a talesman, was then called, and being sworn on his *voir dire*, in reply to the question, whether he had formed or expressed an opinion as to the guilt or innocence of the prisoner, said he had. He was then asked upon what his opinion was based, and he replied, "upon the newspapers and rumor." On further examination, he said that the opinion he had formed "was not of a fixed or positive character; that he had not, to his knowledge, talked with any witness in the case, nor with any person who claimed to have any knowledge of the facts of the case; that he had *no prejudice or bias in his mind* for or against the prisoner; that he felt confident that if he should be sworn as a juror in the case he could give the prisoner a perfectly fair and impartial trial, according to the evidence produced by the witnesses, and be governed by the evidence, and that alone." He further swore, in answer to questions asked by counsel for the prisoner, that he "believed and accepted as true the

accounts, verbal and printed, which he had heard and read, and had seen no reason since to change his belief; but he felt confident that if sworn as a juror he could and would be governed and guided alone by the evidence, and could render a fair and impartial verdict, but that it would require evidence to change his opinion." The Court having pronounced him competent as a juror, the prisoner thereupon challenged him peremptorily, and excepted to the opinion of the Court.

In the second exception it appears that Nimrod Little, a talesman, was sworn on his *voir dire*, and in answer to the usual question, said he had formed and expressed an opinion, "but that such opinion was based on newspaper reports and rumors, and that such opinion was not of a fixed or positive character; that he had not conversed with any of the witnesses in the case, nor with any person who claimed to have any knowledge of the facts; that he had *neither prejudice nor bias* for or against the prisoner, and felt confident that if accepted as a juror, he could render a perfectly fair and impartial verdict, according to the evidence, and the evidence alone, which might be produced on the trial." And on further examination by the counsel for the prisoner, he said "that the opinion or belief, which he had so formed or expressed, as to the guilt or innocence of the prisoner, he still entertained, and that it would take some evidence to change that belief; but that it could be changed by the evidence; that he could render a fair and impartial verdict on the evidence alone, irrespective of the opinion he had so formed or expressed." Whereupon the Court pronounced this talesman qualified as a juror, and the prisoner then challenged him peremptorily, and excepted to the ruling of the Court.

The third bill of exception was taken to the ruling of the Court in holding that John A. Martin, a talesman, was competent to be sworn as a juror. This talesman

answered the questions substantially in the same manner, and showed his mind to be in all respects in a similar state and condition to the minds of the talesmen named in the two preceding exceptions. He was emphatic in saying that the opinion he had formed on newspaper accounts, and conversations, was not of a fixed or positive character ; that he had *no bias or prejudice* for or against the prisoner ; and that he felt confident that he could give the prisoner a perfectly fair and impartial trial, according to the evidence that might be adduced on the trial. In answer to questions propounded by the counsel of the accused, he said, "I have an opinion from what I have read, but it can be changed by testimony." He also said that he believed what he had heard and read, and would continue to take it as the truth until he had other evidence ; that the opinion he had formed would readily yield to evidence ; and that he believed that he would be able to weigh the evidence as fully and fairly as though he had never formed an opinion. Thereupon the Court pronounced this talesman qualified to be sworn as a juror, and he was accordingly accepted and sworn, with the prisoner's twenty challenges still unexhausted. The prisoner excepted to the ruling of the Court, declaring the talesman, Martin, competent.

Afterwards, Charles Keyser, a talesman, was called and examined on his *voir dire,* and declared to be competent as a juror, but was thereupon challenged peremptorily by the prisoner, thereby exhausting his twenty peremptory challenges. And then Thomas Brown, a talesman, was called and examined on his *voir dire,* and was declared to be competent by the Court ; whereupon the prisoner challenged said Brown peremptorily, but which challenge was disallowed by the Court, because the prisoner had exhausted all of his peremptory challenges before Brown was called ; and therefore Brown was sworn as a juror ; to which ruling of the Court the prisoner excepted.

Garlitz *vs.* State.

We have thus fully stated the facts to show the bases of the several rulings of the Court in disallowing the challenges for cause interposed by the prisoner. The fourth exception seems to have been taken for the purpose of showing how the prisoner might be or had been prejudiced by being required to expend his peremptory challenges on talesmen challenged for cause, but which challenges for cause had been overruled.

1. All persons accused of crime are entitled, as matter of right, to be tried by a fair and impartial jury, selected according to law. About this there can be no question. But the question is constantly presented in practice, by what standard or test is the condition of the mind to be tried, in order to obtain with reasonable certainty, the requisite degree of fairness and impartiality in those called upon to serve as jurors? In this age of intelligence and universal reading, with newspapers in the hands of every man with sufficient intelligence to qualify him to sit upon a jury, to require that jurors shall come to the investigation of crime committed in their community, no matter how notorious or atrocious it may be, with minds wholly unaffected or unimpressed by what they may have read or heard in regard to it, is simply to maintain a rule or standard by which every man who is fit to sit upon a jury may be excluded. Many crimes are committed under circumstances of such flagrant atrociousness as to impress and shock the whole community, the ignorant as well as the intelligent; and if such rule of exclusion were applied, it would, in many cases, render the impannelling a jury impossible. Such state of things could never be contemplated by the law. All men, by natural instinct, are supposed to be more or less biased against crime in the abstract; and every member of the community, against which crime has been committed, is naturally interested and impressed with the circumstances of

Garlitz *vs.* State.

crimes of atrocious character.   But this natural bias,
however atrocious the crime, can never be regarded as a
sufficient cause for the disqualification of the juror.   The
intellectual, as well as the moral impressions, produced
by the reading or hearing of reports or statements of
facts in regard to the commission of crime are such that
intelligent minds cannot resist; indeed, in many cases
the mind receives the impressions from such statements
intuitively.   But these impressions, with intelligent,
fair minded men, are always of a hypothetical nature,
resting upon the supposition of the truth of what they
have read or heard.   The minds of such men always
remain open to the correction of former impressions, and
remain entirely impartial, with power to hear and deter-
mine upon the real facts of the case, without the least
bias in favor of former impressions, whatever they may
have been.   And therefore, in our present state of
society, all that can be required of a juror, to render
him competent, is, that he shall be without bias or
prejudice for or against the accused, and that his mind
is free to hear and impartially consider the evidence,
and to render a verdict thereon without regard to any
former opinion or impression existing in his mind,
formed upon rumor or newspaper reports.   Whenever
it is shown that such is the state of mind of the juror,
he should be held to be competent; and such is the rule
as laid down by this Court in the case of *Waters vs. The
State*, 51 *Md.*, 430.   In that case it was said "that the
opinion which should exclude a juror must be *a fixed
and deliberate one*, partaking in fact of the nature of a
pre-judgment."

In this case each of the talesmen challenged for cause,
swore that he was without bias or prejudice for or against
the prisoner; and that, notwithstanding the previous
opinion formed in regard to the case, he felt confident
that he could give the prisoner a perfectly fair and impar-
tial trial, upon the evidence, and upon that alone.

Garlitz *vs.* State.

It is urged, however, that these talesmen swore that they still retained their original impressions in regard to the case, and that it would require evidence to remove such impressions, and therefore the challenges should have been allowed. But it is a very simple and elementary law of the human mind that an impression once made will not be effaced without some adequate cause to effect the result. A man cannot readily divest his mind of former impressions without reason or evidence therefor, and render his mind a blank at his mere will. It was therefore quite natural for these talesmen to say that it would require some evidence to change their former impressions. Indeed such must be the case, to a more or less extent, in all instances where jurors are sworn who had previously formed opinions or impressions in regard to the case, upon rumor or newspaper reports. But it does not follow that such condition of mind renders the juror incompetent. This has been determined in several well considered cases. *Ulrich vs. People*, 39 *Mich.*, 246; *People vs. Barker*, 60 *Mich.*, 277, 1 *Am. St. Rep.*, 501; *State vs. Green*, 95 *N. C.*, 611; *Sneed vs. State*, 47 *Ark.*, 180; *People vs. Clark*, (*N. Y.*) 3 *Cent. Rep.*, 801.

The question of the competency of the talesmen challenged for cause seems to have been fully investigated by the Court below; and the question being one of mixed law and fact, the judgment of that Court ought not to be disturbed by a Court of Review, unless there be clear and manifest error to the prejudice of the prisoner. This is the rule laid down in such cases by the Supreme Court of the United States, and it is founded both in principle and sound common sense. *Reynolds vs. U. S.*, 98 *U. S.*, 155, 156; *Spies vs. Illinois*, 123 *U. S.*, 179. There is no such error apparent in either the first, second, third, or fourth bills of exception, and the rulings thereon must therefore be affirmed.

2. The fifth bill of exception was taken to the overruling an objection to the admissibility of evidence. After proof of the homicide, the State proved by the sister of the deceased wife, that on the Saturday night preceding the killing, the prisoner made an assault upon his wife in one of the streets of the town, and drew his knife, and declared that he had a mind to stab her to the heart, but desisted; and then offered to prove by the same witness that on the next evening the parties met by appointment with the prisoner at the house of the prisoner's brother; and that when the wife and her sister were about to start for home, the prisoner proposed that they should take a different route from that by which they came, and return by an unfrequented and little used path over the mountain, which they declined to do. To the admissibility of this evidence the prisoner objected, but his objection was overruled, and the evidence allowed to be given, and he excepted. What may have been the object of the prisoner in desiring his wife to return by the way suggested by him, it may be difficult to determine; but in connection with what had transpired on the day preceding, and the killing two days after, at a place of meeting designated by the prisoner himself, the Court was clearly right in allowing this circumstance to go to the jury, to be considered with all the other circumstances reflecting upon the fact of premeditation.

3. After proof by the State of the killing of the wife by the prisoner, and all the circumstances attending the act, the State rested the case. The prisoner then proved by a witness named Ridgley, that he had known the prisoner all his life, and that the latter was at the house of witness on the evening of the day of the shooting the wife, but before the occurrence. The witness was then asked "what was the demeanor, appearance, conduct and bearing of the prisoner on that evening." To which

Garlitz vs. State.

question the State objected, and the objection being sustained, the prisoner excepted.

The same witness was then asked if he knew the temperament and disposition of .the prisoner, to which he replied that he did. The prisoner then proposed to ask the witness what such temperament or disposition was; and offered to follow up such testimony by evidence that, at the time of the shooting the wife, she had confessed to the prisoner that she was guilty of criminal intimacy with one Robert Beall. To which proposed question the State objected, and the objection being sustained, the prisoner excepted.

There is no specific object stated for which the proposed testimony was offered. But it would be difficult to suggest any object for which such evidence would be admissible. The much abused defence of insanity is not set up, or pretended to exist; and whatever the *demeanor, appearance, conduct and bearing* of the prisoner may have been *before* the commission of the act; or his *natúral temperament or disposition* before and at the time of the act, were circumstances that could furnish no excuse or justification for the commission of the crime, nor could they, in contemplation of law, furnish evidence to reduce the degree of the offence. *Jacob vs. Comm.*, 121 *Pa. St.*, 586; *Small vs. Comm.*, 91 *Pa. St.*, 304. The Court, therefore, was clearly right in excluding the testimony. And in this connection, the Court was equally right in its rulings as stated in the eleventh and twelfth exceptions, whereby it excluded the questions proposed to be asked of the witness, the father of the prisoner; "What was the prisoner's appearance and bearing, up to the time he left the house of the witness, shortly before the shooting of the wife,—whether cheerful and quiet, or excited;" and "what is the disposition of the prisoner? is he quick and passionate, or slow and phlegmatic in temperament?" Testimony sought to be

evoked by these questions was clearly inadmissible. It is not the particular disposition or temperament of the accused, but the nature of the alleged provocation, such as may be supposed to affect and influence ordinary minds, that may be considered in mitigation of crime. Here the prisoner was allowed the fullest benefit of what he set up as the provocation to the commission of the shocking crime of which he was accused; but that attempt to palliate his crime did not avail with the jury.

4. In the eighth bill of exception, it is stated that the witness Haley had testified that he had told the prisoner something about his wife. The prisoner then proposed to ask the witness what it was that he had told the prisoner about his wife, to which the State objected, and the objection was sustained by the Court. But this objection by the State was afterwards withdrawn, and the witness was permitted to answer the question; and, in reply, he said, "I did tell him that Beall was going with his girl; I presume I meant his wife."

5. The ninth bill of exception presents a question of rather a remarkable character. It appears that, in the course of the argument before the Court, upon the admissibility of the evidence sought by the question objected to in the eighth exception, Mr. Semmes, one of the counsel for the prisoner, contended for the admissibility of such evidence, that is, the statement or communication of a third party made to the husband in regard to the conduct of his wife, and said, in the course of his argument, "That there was no longer any question in American Courts, and before American juries, *of the competency and pertinency* of such testimony; that the invariable rule had been, and is, in cases like the one then on trial, to admit such communications, *and every Court and jury in the land had in every such instance acquitted the accused and justified the killing.*" From this most remarkable and unwarrantable assertion by counsel,

Garlitz *vs.* State.

made in the argument to the Court, and in the presence of the jury, the Court did not hesitate, as it was its duty to do, to declare its emphatic dissent; and Judge HOFF-MAN enlarged his remarks upon the moral aspect of the defence set up by the prisoner, which, we may say, might well have been omitted in the then state of the case. To the remarks of Judge HOFFMAN, as tending to prejudice the mind of the jury, exception was taken by the prisoner. But there is clearly no substantial foundation for the exception, as both Judges were careful to admonish the jury that they had no concern with anything that was said or done with respect to the question before the Court,—that their duty was confined to the law and to the facts admitted to them for consideration.

It would be strange, indeed, if counsel could make any sort of reckless assertion as to the law applicable to a case on trial, while arguing a question of evidence to the Judge, and the latter was without authority to give expression to his full and emphatic dissent from the unwarrantable contention of counsel. This is certainly the right of a Judge, and it may often be his imperative duty to exercise that right in a very positive and emphatic manner.

6. In the tenth bill of exception, it is stated that the prisoner and witness Haley were together about seven o'clock of the same evening of the shooting, and shortly before the occurrence; and the State asked the witness whether he felt a pistol on the person of the prisoner, and he replied that he did; that he asked the prisoner what he was going to do with the pistol, but did not recollect his answer. This evidence was objected to by the prisoner, and the objection was overruled. It is too clear for question that the ruling was correct.

7. The prisoner became a witness himself, and, in the course of the cross-examination by the State, it was proposed to be shown by him, and was, under the ruling of

the Court, shown, that the prisoner, while a married man, but living apart from his wife, maintained improper relations with other women; that such relations, in one instance at least, were of a criminal nature. But the counsel for the prisoner objected to such evidence, and the Court admitted it only so far as it tended to show estrangement of the prisoner from his wife. This ruling is the subject of the thirteenth exception. It is shown that the prisoner, at the time of the homicide, was still living apart from his wife. In his examination in chief, his effort had been to show that he committed the act of killing his wife under the influence of a provocation created by her confession of infidelity. He had sworn that he was so shocked and overcome by her admission that he was seized by a frenzy or distraction of mind that deprived him for the moment of all reason and control of himself, and that it was while in this state of mind that the act was done. The question, on cross-examination, propounded by the State's attorney, and objected to by the prisoner, would seem to be admissible for the purpose of showing the prisoner's estimate and appreciation of the marital relation and fidelity, and the improbability that he was shocked and overcome in the manner described in his testimony in chief. His relations to his wife and to other women were circumstances to be considered as pertinent to the defence attempted to be maintained by his testimony in chief; and therefore there was no error in allowing the question to be asked.

8. The prisoner, in the course of his examination in chief, and on cross-examination, as a witness, made various statements as to what occurred at the time of the homicide, and as to his own conduct and condition of mind upon that occasion. These statements were made in support of the defence set up by him, and were first brought out on his own examination. At the close of his case, the State called Mr. Avirett as a witness, to

Bowland *vs.* Wilson, *et al.*

rebut and contradict certain statements made by the prisoner on the witness stand, by showing what had been his own previous account of the transaction. This was objected to as being evidence in chief; but the Court admitted the evidence for the purpose of rebutting and contradicting the testimony of the prisoner; and this forms the subject of the fourteenth and last exception. The State was certainly not required to anticipate what would be the statements of the prisoner on the witness stand; and if he made statements at variance with former admissions or statements by him, such former admissions or statements were clearly admissible in rebuttal for the purpose of contradiction and impeachment. There was no error therefore in this last exception.

Upon careful consideration of each and all of the exceptions in this case, we find no ground for the reversal of any of the rulings of the Court below; and therefore, according to our judgment, all the rulings must be affirmed, and the case be remanded for judgment on the verdict of the jury.

*Rulings affirmed, and*
*cause remanded.*

(Decided 26th June. 1889.)