**UNITED STATES of America**

v.

**Willis G. KYLE, Appellant.**

**No. 71–1091.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 1972.

Decided June 15, 1972.

Rehearing Denied Aug. 30, 1972.

Certiorari Denied Jan. 8, 1973.
See 93 S.Ct. 920.

---

**548**

Mr. Harry W. Cladouhos, Washington, D. C., with whom Mr. David J. Taylor,

Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Stephen W. Grafman, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and John F. Evans, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

TAMM, Circuit Judge:

Appellant, Willis G. Kyle, convicted of second-degree murder [1] and carrying a pistol without a license,[2] appeals from the adverse disposition of his motion for a new trial by the district court judge. The basis for the motion was the possibility that three of the jurors in the case were improperly influenced by their presence on a jury which only two days earlier had been "castigated" by another judge for rendering a verdict of not guilty. Although we strongly disapprove of the acrimonious remarks of the trial judge in the former case, we find no error meriting reversal in the instant case.

## I.

On September 21, 1970, a jury returning a verdict of not guilty in United States v. Artis,[3] was subjected to the following statement by the trial judge:

I just want to say this to the jury:

Of course the jury has decided the question of guilt or innocence of this defendant. I don't think I deviated from this policy in the almost 13½ years I have been on the court. I have seen some surprising verdicts, frankly, but this beats anything I ever heard. And you members of the community who are always concerned about the crime situation, to return a verdict like this in this case, I must say, and the Assistant U. S. Attorney

---

1. D.C.Code § 22–2403.

2. D.C.Code § 22–3204.

3. Criminal No. 625–70.

almost keeled over, I noticed, when the jury announced the verdict, I would be ashamed of this verdict.

Thank you very much.

The jury in the case *sub judice*, impaneled two days later, included three *Artis* jurors [4] who were allegedly improperly influenced by the comments recited above. Prior to impaneling, both counsel for the government and appellant carefully examined the jurors during voir dire searching for the slightest hint of prejudice. The prosecutor propounded the following interrogatories:

I would like to ask if any of you, for any reason whatsoever, have any hesitancy as to why you should not be a member of the jury and hearing the facts in this case and rendering a fair and impartial verdict according to the evidence adduced from the courtroom?

\* \* \* \* \* \*

Again, is there anyone that feels he cannot sit as a fair and impartial jury member representing the people of the District of Columbia in this case?

Similarly, learned, experienced counsel for appellant queried the jury as follows:

[W]hether any one of you feel that it would be difficult or impossible for you to acquit this defendant if, under the evidence as you find it to be and the instructions which the Court will give you, a reasonable doubt of his guilt [*sic*]?

Again, I take it that if you would hear the evidence in this case and after the Court has instructed you, that if you felt this defendant was not guilty, that you would have no hesitancy about acquitting this defendant if the Government has not proved its

case beyond a reasonable doubt that it was not an unlawful and unjustified killing.

To each of the respective queries there were no responses indicating an inability to fairly decide the case. The prosecutor asserted no challenges whatsoever to the prospective jurors,[5] whereas counsel for appellant exercised four peremptory challenges, but none for cause.

Prior to retiring for deliberation, the able trial judge instructed the jury as follows:

You should not draw any inference with respect to the guilt or innocence of this Defendant by any ruling that the Court has made during the course of the trial . . . .

You are the sole and exclusive judges of the facts. You alone determine the weight, the effect, and the value of the evidence, and the credibility of the witnesses. You should determine the facts *without* prejudice, fear, or favor, solely from a fair consideration of the evidence.

On your oath as jurors you must decide this case without sympathy, bias or prejudice against any of the parties.

After the verdict, but before sentencing, appellant's counsel, apprised of the presence of the *Artis* jurors in the case at bar, moved for a new trial. At the hearing on the motion, the prosecutor acknowledged that he was informed, prior to trial, via inter-office memorandum, of the comments addressed to, and the verdict of, the *Artis* jury, as well as the participation of some *Artis* jurors in the instant case. He stated, however, that he did not understand that he was under a duty to transmit to defense counsel the nature of a statement made by a

4. The jury that deliberated and ultimately returned its verdict in the instant case included three *Artis* jurors. A fourth *Artis* juror, serving as an alternate in the instant case, was discharged prior to commencement of the jury's deliberation.

5. Realizing that the *Artis* jurors were near the bottom of the list of prospective jurors in the instant case, the prosecutor decided not to strike any jurors in the hope that the *Artis* jurors would not be reached for service.

judge in open court, and that indeed his main focus at the time was his concern that a jury was unfavorable from the government's point of view.

## II.

■ At the outset we should make it clear beyond peradventure that we condemn the philippic directed at the *Artis* jury. Critical or laudatory words with reference to the verdict may unduly influence jurors during the remainder of their term and should accordingly be excised from the trial judge's vocabulary. It is the prerogative, indeed the duty, of the jury to render the verdict it deems appropriate unobstructed by the personal reaction of the presiding judge. The danger inherent in any other course of action has been recognized by the American Bar Association:

> While it is appropriate for the court to thank jurors at the conclusion of a trial for their public service, such comments should not include praise or criticism of their verdict.

ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial By Jury § 5.6 (Approved Draft, 1968).

■ However, we feel, in the context of this case, the utterance of these words of reproach is not reversible error. Initially, we note the dissimilitude of the two cases which substantially reduces the possibility of prejudice. We are confronted with different defendants, different counsel for prosecution and defense, different witnesses and most significantly different judges. Furthermore, the voir dire examination and instructions of law which we have set out above militate against the likelihood of undue influence. Each of the jurors, having taken an oath, agreed to return a verdict solely upon the evidence adduced during the course of the trial. We "should be slow to impute to juries a disregard of their duties." Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439 (1933), for "we must not permit the integrity of the jury to be assailed by mere suspicion and surmise; it is presumed that the jury will be true to their oath and conscientiously observe the instructions of the court." United States v. Sorcey, 151 F.2d 899, 903 (7th Cir. 1945), cert. denied, 327 U.S. 794, 66 S. Ct. 821, 90 L.Ed. 1021 (1946).

The cases principally relied upon by appellant do not contradict the result we reach here today. In Commonwealth v. Albert, 437 Pa. 195, 262 A.2d 855, cert. denied, 400 U.S. 825, 91 S.Ct. 49, 27 L. Ed.2d 54 (1970), the court, when confronted with the precise situation we now face, reached the same conclusion. The fact that the *Albert* court knew of the judge's intemperate remarks prior to the trial is in our view a distinction without a difference. Furthermore, our holding in Jackson v. United States, 129 U.S.App.D.C. 392, 395 F.2d 615 (1968), where a juror affirmatively failed to make a truthful disclosure when queried during voir dire, is clearly distinguishable on its facts.

Finally, we turn to the failure of the prosecutor to transmit to defense counsel his knowledge (a) that three of the jurors had been members of the *Artis* panel, and (b) that the *Artis* panel had been scolded by the other judge. It is material that these were both matters in the public domain. There are a number of matters in the public domain that are known to prosecutors that are not part of the working kit of the lawyer who is occasionally assigned to a criminal case. That lawyer has access to the help of the Public Defender Service, but sometimes this does not fully redress the balance. In other cases, however, the advantage of know-how may lie not with the prosecutor but, perhaps, with lawyers in private practice, many of whom have had years of training as prosecutors or public defenders, and experience in criminal law practice. It is not possible to obtain exact equality. It suffices that there is defense skill sufficient for effective assistance of counsel. The superior knowledge of one counsel or the other may refer, *e. g.*, to knowledge of

the judge's approach to a pertinent point of procedure, or to knowledge that members of the panel were on previous juries and how those juries voted. So long as matters are in the public domain, it is hard to develop a general theory of disclosure.

■ Ordinarily there would be no basis for a duty to disclose material pertaining to public aspects of a juror's service, for example voting record in other cases, and relative experience or inexperience, but when there has been a prior governmental impetus affecting a juror's prior service, and it is of a nature likely to escape the attention even of reasonably diligent appointed counsel, considerations of basic fairness may generate a duty to disclose.

■ Here we accept the prosecutor's statement that he was concerned primarily with the hard reality of the *Artis* jurors' earlier verdict, indicating an attitude unfavorable to the prosecution, rather than with the speculative effect of the comments of the previous judge. We cannot say this reaction to the situation was unreasonable, or betokened bad faith or a callous disregard for fairness to defendant.[6] Even with the hindsight of the importance attached by defendant's appellate counsel to the prior incident, it would not have constituted an automatic disqualification of all *Artis* jurors, if they felt able to render a fair verdict in future cases. The problem before us is unlikely to arise again, in view of our comments above. The case against defendant was strong on the facts, *see* United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239, 60 S.Ct. 811, 84 L.Ed. 1129 (1939), and there is no basis beyond speculation for a finding of undue influence.

Affirmed.

BAZELON, Chief Judge, dissenting:

Two days prior to the commencement of appellant's trial, the defendant in another case, United States v. Artis, Crim. No. 625–70, was acquitted by a unanimous jury. The trial judge in that case berated the jurors for returning a verdict of which he would be "ashamed" and for showing too little concern for the "crime situation." Two (or perhaps three—the record on this point is unclear) of the jurors who were subjected to this unfortunate attack participated in appellant's trial, and voted to convict him of second-degree murder and carrying a dangerous weapon.

All of us "strongly disapprove of the acrimonious remarks of the trial judge in the former case," majority opinion at 548 because "[c]ritical or laudatory words with reference to the verdict *may unduly influence jurors* during the remainder of their term." Majority opinion at 550 (emphasis added. The point of disagreement is whether appellant's conviction must be reversed.

A majority of the panel concludes that the conviction should not be reversed, apparently on the grounds that appellant was not prejudiced by the presence of the *Artis* jurors. But it is hard to see how appellant could have demonstrated any prejudice short of taking the disfavored step of introducing affidavits of the jurors who had been criticized by the trial judge in *Artis*. Even that course would reveal prejudice to the defense only if the jurors were (1) consciously influenced by the attack in *Artis*, and (2) willing to admit it. A Procrustean demand for a showing of prejudice is ill-suited to a case where the very integrity of the judicial process is at stake and where the inability to demonstrate prejudice offers little assurance that prejudice did not exist. *Cf.* R. Traynor, The Riddle of Harmless Error 64–66 (1970).

If the trial judge had been aware of the *Artis* incident and of the manifest possibility of prejudice to the defendant in this case, he would surely have taken

---

6. Indeed if the prosecutor had pointed up the *Artis* facts to defense counsel, he courted the possibility of defense use of peremptory challenges to maximize the presence of *Artis* jurors.

some action to eliminate that prejudice. But the trial court had no opportunity to take such action because the prosecutor, who subsequently admitted knowing that some of the jurors had been criticized for their verdict in an earlier case, failed to disclose that information to defense counsel or the trial court. Nevertheless, this Court refuses to reverse the conviction, pointing out that it "accept[s] the prosecutor's statement that he was concerned primarily with the hard reality of the *Artis* jurors' earlier verdict, indicating an attitude unfavorable to the prosecution, rather than with the speculative effect of the comments of the previous judge." Majority opinion at 551. Perhaps the prosecutor reasoned correctly that the participation of these jurors represented a greater threat to the government than to the defense. The simple answer, however, is that the prosecutor is not the judge of what is unduly prejudicial to the government or the defense. Nor does he have the power, irrespective of his good or bad intentions, to decide that the cause of justice is best served by having these jurors participate. His action deprived the trial judge of the ability to rule on a question that goes to the heart of the fairness of appellant's trial.

The Court also suggests that the prior incident "would not have constituted an automatic disqualification of all *Artis* jurors, if they felt able to render a fair verdict in future cases." Majority opinion at 551. That may well be true, but no one questioned these jurors about the prior incident to determine whether it would impair their ability to render a fair verdict. And even if these jurors would not be subject to automatic disqualification, they could have been peremptorily challenged by the defense. The sixth amendment guaranteed appellant a trial before an impartial jury, and the impartiality of the jury should have been established by the trial court and not by the opposing litigant. By concealing the information from defense counsel and from the trial court, the prosecutor—whether his motives were good or bad—thwarted the judicial process. If the information had been disclosed, the trial judge might have excused the *Artis* jurors *sua sponte;* he might have granted a prosecution or defense motion for the disqualification of these jurors; or he might have considered it sufficient to instruct the jurors that they were obliged to disregard the comments of the trial judge in *Artis.* For the present purpose we need not decide which of these, or any other, courses of action would have best served the fair administration of justice. Because the information was withheld from the trial judge, he was barred from taking any action at all. Reversal of appellant's conviction is therefore required.