# JOHN HENRY COUSER *v.* STATE OF MARYLAND

[No. 87, September Term, 1977.]

*Decided March 10, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Martha G. Villmoare, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant was found guilty after a jury trial in the Criminal Court of Baltimore of possessing a controlled dangerous substance with intent to distribute; he was sentenced to 20 years' imprisonment. The judgment was affirmed on appeal. *Couser v. State,* 36 Md. App. 485, 374 A. 2d 399 (1977). We granted certiorari, limited to two issues:

(1) Whether the appellant waived his objection to the denial of his request at the trial for the use of the prosecutor's jury dossier when, after the jury was selected, he stated that it was acceptable to him; and

(2) Whether the appellant had a right to disclosure of the prosecutor's jury dossier and, if so, whether the right is dependent upon a prior showing of prejudice to the accused.

The record discloses that the trial judge conducted a lengthy and probing voir dire examination of the panel of prospective jurors, submitting a total of 14 questions.[1] He first inquired whether any of the prospective jurors were related to or associated with either the prosecutor, defense counsel or the defendant, and whether they had any personal

---

1. The panel was comprised of jurors assigned to Parts I, III and V of the Criminal Court of Baltimore.

knowledge of or any information concerning the crime charged. There were no affirmative responses. The court then asked whether any of the prospective jurors or members of their immediate families had worked in a law enforcement or prosecution agency. There were four affirmative responses; one of the jurors admitted bias in favor of the prosecution and was struck for cause. The court next asked whether any of the jurors had ever been a defense or prosecution witness in a criminal case; there were three affirmative responses. The court next asked whether any of the jurors or their families had ever been victims of a crime. One juror indicated that his mother had been murdered and that he could not render an impartial verdict in a case involving an assault-type crime. Another juror, Paul Sloboda, stated that he had been shot four times and hospitalized for three months, but that he could render a fair and impartial verdict based solely on the evidence.

At this point in the voir dire examination defense counsel stated to the court:

> "[N]ormally the State's Attorneys are equipped with jury lists that give them sort of a scoreboard on how things have developed and I don't have it."

He asked the court "to allow me to have it." The prosecutor responded:

> "I have in my possession a jury list that I personally helped to prepare. . . . We disseminate it throughout the office. Just as I knew that . . . Mr. Sloboda's comment before because I personally had him under voir dire earlier. That's the basis of the preparation of the list. It's based on personal knowledge of each of the different persons and it is our work product."

The prosecutor stated that the appellant was not entitled to his work product. Defense counsel persisted, stating:

> "It is a combined information and I feel that . . . certain comments in there should be equally made known to both sides of the case."

The court denied defense counsel's request, and the voir dire resumed. Following the uneventful propounding of two more questions to the prospective jurors, appellant's counsel asked the court to permit a copy of the prosecutor's jury list to be sealed and included as part of the record for purposes of appellate review. The court concluded that the prosecutor's jury list was his own "work product" in that it constituted:

> "[his] own compilation, whether they think people are good or bad witnesses, they keep a running record of the trials, but every trial is a different trial because a person might be on a certain trial and decide the matter in respect to guilt or innocence doesn't mean they are going to do it a second time."

The court said that if the prosecutor's jury list revealed jurors who had criminal records, he was obligated to reveal this information. Appellant's counsel said that he wanted more than just criminal records:

> "I'm asking for information that will be helpful in allowing me to select a jury as fairly as it is for the State to select a jury."

The court denied the appellant's motion to seal the prosecutor's jury list and include it as part of the record. It stated, however, that it was the duty of the prosecutor, in addition to revealing a juror's criminal record, to also bring to the court's attention any information he possessed of a juror lying under oath on his voir dire examination. The voir dire examination resumed. The prosecutor told the court that his jury list indicated that two of the prospective jurors might have criminal records; he revealed their names to the court and to the appellant. The two jurors were interrogated by the court and each denied being convicted of any crime.

At the conclusion of the voir dire examination, and after the jury had been selected, the clerk asked whether the panel was acceptable both to the prosecution and the defense; each replied in the affirmative.

## (1)

The Court of Special Appeals held, and we agree, that in the circumstances of this case, the appellant did not waive his objection to the denial of his request for the use of the prosecutor's juror dossier when, after the jury had been selected, he stated that the panel was acceptable to him.

In *Neusbaum v. State,* 156 Md. 149, 143 A. 872 (1928), our predecessors held that the defendant waived a previously made objection to a particular jury when he later stated to the court that the jury was acceptable to him. In that case, the prosecutor, while speaking to prospective jurors who were waiting to be examined on their voir dire, made a prejudicial remark; he did so in the presence of several jurors who had already been selected. The defendant objected to the remark and moved that a juror be withdrawn and the case continued. The court denied the motion, but later offered the defendant an opportunity to have a new jury selected. The defendant declined the offer, stating that the jury was acceptable to him. It was held that under such circumstances, the objection had been waived.

In *Glover, Robinson & Gilmore v. State,* 273 Md. 448, 330 A. 2d 201 (1975), a panel of 75 jurors had been exhausted after nine jurors had been seated. The court directed the sheriff to locate and return to court with 25 additional veniremen; the sheriff complied. After the veniremen were seated in the courtroom, the defendants objected to the array on the ground that the sheriff had not consulted the registered voters' lists as required by law. The court denied the challenge after finding that all of the jurors were qualified. After the three additional jurors were selected and seated, the court asked whether the defendants were " 'satisfied with the jury.' " Defense counsel, after consulting with the defendants, responded: " 'Defendants have expressed that they are satisfied with the jury.' " We held in those circumstances that the defendants "unequivocally indicated their satisfaction with the jury at the termination of the jury selection process" and by approving the jury actually selected "waived their prior objection to the panel of talesmen." 273 Md. at 453.

In *Tisdale v. State,* 30 Md. App. 334, 353 A. 2d 653 (1976), the defendant's challenge of two prospective jurors for cause was overruled. The clerk asked defense counsel before the jury was sworn whether the panel was acceptable and he answered in the affirmative. The court there held that there was no waiver of the prior challenge for cause. Distinguishing *Neusbaum* and *Glover,* it said that the objection to the two jurors had been clearly stated on the record and that the defendant's subsequent response indicating approval of the jury as ultimately selected "was merely obedient to the court's rulings and obviously not a withdrawal of the request, timely made, that the jurors be excused for cause." 30 Md. App. at 340.

Nothing in *Neusbaum, Glover* or *Tisdale* [2] is directly apposite to the present case. Appellant's objection was only indirectly aimed at the composition of the jury ultimately selected. His fundamental objection was predicated on the court's refusal to permit inspection or discovery of the prosecutor's jury dossier and to include it as part of the record on appeal. His approval of the jury as ultimately selected — a matter over which he had no control — did not explicitly or implicitly, waive his previously asserted right-to-disclosure claim to the information sought. In the circumstances, we think his objection was preserved for appellate review.

(2)

In holding that the trial court did not err in refusing appellant's request for disclosure and inspection of the prosecutor's juror dossier, the Court of Special Appeals rejected the appellant's basic premise that due process and fundamental fairness required disclosure of the prosecutor's "investigatory report" in order to place the defense upon an equal footing with the prosecution. It stated, however, that due process requires "that the entire criminal process be conducted without unfair prejudice to the accused" and that consequently it would be improper "for the prosecutor to withhold information which would reasonably reflect the

2. We need not here decide whether *Tisdale* properly distinguished *Neusbaum* and *Glover.*

inability of a juror to render an impartial verdict." 36 Md. App. at 490-91. In applying these principles, the Court of Special Appeals concluded that the prosecutor's notations of "ideas and notions on prospective jurors [made] as the result of personal observations of himself and fellow prosecutors" constituted work product and was protected from disclosure. *Id.* at 491. The court said that it was nevertheless within the trial judge's discretionary power "to adjudge, if requested, whether or not any additional information sought by appellant is material and should be disclosed by the State" and that he could "view the prosecutor's notes and determine whether or not due process or fundamental fairness required disclosure." *Id.* at 491-92. The court held that where there were no specific grounds alleged to strike a juror for cause, there was no need for the trial judge to inspect the prosecutor's notes. It said that there was a duty upon the prosecutor to disclose the criminal record of a prospective juror if known to him, and also a duty to disclose that a prospective juror lied under oath. But absent any indication that the jury which was impaneled was prejudiced against the appellant, the court found no denial of due process in withholding the juror dossier from inspection by the appellant; it said:

> "We hold ... that absent any showing that the accused was denied an impartial jury, and that any of the dossier was otherwise discoverable, the trial judge did not err in denying the request for the disclosure of the prosecutor's dossier on prospective jurors." 36 Md. App. at 492-93.

The appellant contends that the Court of Special Appeals was wrong in holding that disclosure of the prosecutor's juror dossier was conditional on a prior showing of prejudice. The contradiction inherent in this holding, he argues, is that without some degree of disclosure the accused is powerless to demonstrate prejudice; yet unless he demonstrates prejudice, disclosure or inspection of the material will not be ordered. Appellant maintains that under both the state and federal constitutions, he has a right to an impartial jury and

that this right, together with considerations of fundamental fairness, requires the trial judge to compel the prosecution to disclose the information to him. And, he argues, the disclosure should not be limited to information relevant to challenges for cause, but should also include information useful in the exercise of peremptory challenges which is not equally accessible to the accused. In this connection, appellant points out that the dossier may contain material not supporting a challenge for cause but enabling the prosecutor to exercise his peremptory challenges more intelligently than the defense, thus giving the prosecutor an unfair advantage.

While taking this view of the prosecutor's duty of disclosure, the appellant recognizes. the impossibility of obtaining exact equality between the prosecutor and the defense. He also disavows the notion that fundamental fairness requires disclosure of material equally accessible to the accused, and he acknowledges that he is not entitled to the prosecutor's work product. But, he argues, once it is brought to the court's attention that a prosecutor possesses information on prospective jurors which is not also in the possession of the defense, the trial judge must then recognize that an element of unfairness has entered the proceedings. Since the right to disclosure is, in appellant's view, a judicial and not a prosecutorial decision, the trial judge must conduct at least a threshold inquiry into the contents of the dossier sufficient to ascertain the type of information which it contains and its sources. Absent such an inquiry, appellant says that prejudice may never become manifest. Because the trial judge failed to pursue the necessary inquiry in the present case, it is urged that appellant's right to an impartial jury was compromised and reversal of the conviction is required.

In effect the doctrine appellant advocates amounts to this: that an accused's right to a fair and impartial jury entitles him, as a matter of right, to inspect a prosecutor's juror dossier, and if the trial judge, whether requested to or not, fails to screen the dossier to determine if it contains information either prejudicial or merely useful to the accused

in selecting a jury, a subsequently obtained conviction must be reversed. The argument finds scant support in the cases.

The general rule appears to be that an accused is not denied his right to a fair and impartial jury merely because the prosecutor does not disclose to him material within his possession relating to the qualifications of prospective jurors which he uses in selecting a jury. *See United States v. Falange,* 426 F. 2d 930 (2nd Cir.), *cert. denied,* 400 U. S. 906 (1970); *Martin v. United States,* 266 F. 2d 97 (5th Cir. 1959); *United States v. Costello,* 255 F. 2d 876 (2nd Cir.), *cert. denied,* 357 U. S. 937, *reh. denied,* 358 U. S. 858 (1958); *Best v. United States,* 184 F. 2d 131 (1st Cir. 1950), *cert. denied,* 340 U. S. 939, *reh. denied,* 341 U. S. 907 (1951); *Christoffel v. United States,* 171 F. 2d 1004 (D.C. Cir. 1948), *rev'd on other grounds,* 338 U. S. 84 (1949); *Jebbia v. United States,* 37 F. 2d 343 (4th Cir.), *cert. denied,* 281 U. S. 747 (1930); Annot., 78 A.L.R.2d 309 (1961). These cases do not distinguish between public and nonpublic information made available to the prosecutor for jury selection purposes. Rather, they involve use by the prosecutor of information concerning qualifications of prospective jurors obtained from sources not ordinarily available to the accused, namely, police agencies, income tax records, and government employees. The courts in these cases have held that the prosecutor need not disclose the results of such investigations of prospective jurors to the defense. The crucial question in these cases has seemingly been whether, in view of all circumstances, including the conduct of the voir dire examination of prospective jurors, the accused was afforded a fair and impartial jury.

Some courts have applied the rule in a more limited manner; they hold that ordinarily there is no duty upon a prosecutor to disclose to the defense material pertaining to public aspects of a prospective juror's service or facts which the prosecutor has assembled from public records. Thus, in *People v. Stinson,* 58 Mich. App. 243, 227 N.W.2d 303 (1975), the defendant sought to inspect the prosecutor's jury dossier which contained voting records of jurors from prior cases. The Court held that there was no right to disclosure since the information was public and available to the defense. In *People*

*v. McIntosh,* 400 Mich. 1, 252 N.W.2d 779 (1977), the Supreme Court of Michigan affirmed the rationale of *Stinson* holding that the defense had no right to inspect jury dossiers compiled by the prosecutor from public records. Past voting records of prospective jurors were also involved, and the same rule was cited with approval in *United States v. Kyle,* 469 F. 2d 547 (D.C. Cir. 1972), *cert. denied,* 409 U. S. 1117 (1973); and *Britton v. United States,* 350 A. 2d 734 (D.C. 1976).

In *Kyle,* however, the court held that notwithstanding the public nature of the information contained in the prosecutor's jury dossier, where there had been "a prior governmental impetus affecting a juror's prior service, and it is of a nature likely to escape the attention even of reasonably diligent appointed counsel, considerations of basic fairness may generate a duty to disclose." 469 F. 2d at 551. In that case, the prosecutor knew, but the defendant did not, that three members of the jury which convicted the defendant had been castigated in an earlier case by another judge for rendering a not guilty verdict. The court nevertheless affirmed the conviction, finding that in view of the extensive voir dire conducted by the trial judge, there was no basis beyond speculation to believe that the jury was subjected to undue influence.

Where nonpublic information included within a prosecutor's dossier on prospective jurors is supplied to him by law enforcement agencies for use in selecting a jury, some courts take the position that such information must also be disclosed to the defense. In *Commonwealth v. Smith,* 350 Mass. 600, 215 N.E.2d 897 (1966), prospective jurors and their families had been interviewed by the police at the prosecutor's request, and an investigatory report prepared for his use in selecting a jury. The defendant claimed that the prospective jurors had been intimidated by the police inquiries and their impartiality thereby destroyed. He sought an order authorizing him to inspect the prosecutor's jury dossier. The court there condemned the practice of using police officers to gather information about prospective jurors unless the process was supervised by the court and the information made available to the defense. It nevertheless affirmed the

conviction, finding that the voir dire conducted by the trial judge was adequate to assure that the police investigation had not prejudiced the jury panel.

Similarly, in *People v. Aldridge,* 47 Mich. App. 639, 209 N.W.2d 796 (1973), the defense sought disclosure of the prosecutor's juror dossier after the jury had been selected. It was alleged that the dossier contained information compiled for the prosecutor's use by the police of adverse contacts with the law involving prospective jurors or their families, as well as information pertaining to whether the jurors were prosecution-minded. Finding the principle of fundamental fairness to be controlling, the court held that the information must be disclosed to the defendant since no basis existed for affording him unequal treatment. It remanded the case with directions that the trial judge inspect the dossier, and if it contained information justifying a challenge for cause, the conviction was to be reversed and a new trial ordered.[3]

In *Losavio v. Mayber,* 178 Colo. 184, 496 P. 2d 1032 (1972), an order was sought to require the police to permit defendants in criminal cases to inspect police records of prospective jurors which were made available to the prosecutor in the selection of juries. The court there concluded that the compilation of such records did not constitute the "work product" of the prosecutor, and that the requirements of fundamental fairness required that they be disclosed to the defense.

Other courts have stated the rule in these terms: that an accused is not entitled to access to the prosecutor's prospective juror dossier, absent a showing of prejudice, exceptional circumstances or compelling reasons. *See, e.g., State v. Wright,* 344 So. 2d 1014 (La. 1977); *Britton v. United States,* 350 A. 2d 734 (D.C. 1976); *Commonwealth v. Smith,* 457 Pa. 638, 326 A. 2d 60 (1974); *People v. Brawley,* 1 Cal. 3d 277, 461 P. 2d 361, 82 Cal. Rptr. 161 (1969), *cert. denied,* 400

---

3. The holding in *Aldridge* is not necessarily inconsistent with the other Michigan cases — People v. Stinson, *supra* and People v. McIntosh, *supra.* The former case involved records not in the public domain; the latter cases involved information available to the public.

U. S. 993 (1971). These cases involve dossiers containing information compiled by prosecutors about prior voting records of jurors, responses given in voir dire examinations in other cases, biographical data and prosecutorial evaluations of a juror's prior service. In *Wright,* for example, the court said that the accused was not entitled to inspect the dossier because he made no showing that disclosure was necessary to prevent undue prejudice, hardship or injustice, or that he was unable to obtain the information from other sources. *Brawley, Smith* and *Britton* contain similar holdings declining to compel discovery of juror information where it was not demonstrated that the dossier contained information that would cause any juror to be disqualified.

Whether the "work product" doctrine protects data included within a prosecutor's jury dossier would seem to depend upon the nature and substance of the information itself. With respect to the applicability of the doctrine, the court in *Wright* and the Pennsylvania Supreme Court in *Commonwealth v. Smith, supra,* noted that the American Bar Association Project on Standards for Criminal Justice: Standards Relating to Discovery and Procedure Before Trial, Standard 2.6 (a) (Approved Draft, 1970), provides that "Disclosure shall not be required of legal research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of the prosecuting attorney or members of his legal staff." Maryland Rule 741 c 1, in effect at the time of the appellant's trial, contains a similar provision, *i.e.,* the State is not required to disclose "Any documents to the extent that they contain the opinions, theories, or conclusions or other work product of the State's Attorney."

In *United States v. Nobles,* 422 U. S. 225, 95 S. Ct. 2160, 45 L.Ed.2d 141 (1975), the Supreme Court said that "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." 422 U. S. at 238. The doctrine, it said, reflects the strong public policy underlying the orderly prosecution and defense of legal claims, and is vital in assuring the proper functioning of the

criminal justice system. It observed: "The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Id.* at 238. In this context, the Court referred to *Hickman v. Taylor,* 329 U. S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), a civil case involving the applicability of the work product doctrine, in which it said:

"[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . . Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. . . ." 329 U. S. at 510-511.

The Court concluded in *Hickman* that a party is not entitled to discover work product without a showing of necessity or a demonstration that denial of the material would unduly prejudice the preparation of the case or cause hardship or injustice.

In the view we take of the present case, we need not decide whether the prosecutor's dossier, or any part of it, constituted undiscoverable "work product," although we think that criminal records of prospective jurors supplied to the prosecutor by the police would in no event qualify as

protected "work product." As previously set forth, the prosecutor's dossier contained information compiled about jurors from prior voir dire examinations and past voting records, which was essentially in the public domain. The appellant asserted an absolute right to inspect the dossier on the ground that "certain comments in there should be equally made known to both sides of the case" and because it would be "helpful in allowing me to select a jury as fairly as it is for the State to select a jury." Appellant did not ask the court to inspect the dossier *in camera.* He did not allege that he was unable to obtain the same information from other sources, that he would be unduly prejudiced without it in selecting a fair and impartial jury, or even that the prosecutor was actually using the dossier in selecting the jury. He did not contend then, nor does he now, that the prosecutor withheld information in his dossier pertaining to criminal records of the prospective jurors; such information was revealed by the prosecutor and, in addition, a supplementary voir dire question was asked as to whether any of the jurors had ever been convicted of a crime.

In the circumstances of this case, we agree with the Court of Special Appeals that the appellant failed to show that his right to a fair and impartial jury was denied to him. It is true, of course, that the due process clause of the fourteenth amendment and Article 21 of the Maryland Declaration of Rights guarantee the right to an impartial jury to an accused in a criminal case; these constitutional guarantees do not, however, insure that a prospective juror will be free of all preconceived notions relating to guilt or innocence, only that he can lay aside his impressions or opinions and render a verdict based solely on the evidence presented in the case. *See Irvin v. Dowd,* 366 U. S. 717, 81 S. Ct. 1639, 6 L.Ed.2d 751 (1961); *Newton v. State,* 147 Md. 71, 127 A. 123 (1924); *Garlitz v. State,* 71 Md. 293, 18 A. 39 (1889). The constitutional right to an impartial jury is basically protected by questioning on voir dire examination aimed at exposing the existence of cause for disqualification · and the law of this State accordingly so limits the scope of the information which may be obtained as a matter of right; it does not encompass asking

questions designed to elicit information in aid of deciding on peremptory challenges. *Mason v. State,* 242 Md. 707, 218 A. 2d 682 (1966); *McGee v. State,* 219 Md. 53, 146 A. 2d 194 (1959); *Curtis v. State,* 4 Md. App. 499, 243 A. 2d 656 (1968).

No authority exists to support the proposal that where a prosecutor has information on prospective jurors of the type involved here which the accused does not share, that the trial judge must, even though not requested, inspect the material and order disclosure of information relevant to challenging a juror for cause as well as information merely useful in exercising peremptory challenges. In *Hamer v. United States,* 259 F. 2d 274 (9th Cir. 1958), *cert. denied,* 359 U. S. 916, *reh. denied,* 359 U. S. 962 (1959), it was argued, as it is here, that the defendant was deprived of her right to an impartial jury trial because she was not afforded access to the prosecutor's juror dossier which contained "information as to how the jurors had previously voted." There, as here, it was asserted that this unfairly created "an unequal situation in the selection of the jury." At the defendant's request, the trial judge inspected the dossier and found that it contained information evaluating approximately 300 jurors with respect to their prior voting records, degree of attentiveness, family and personal history, and whether they were prosecution or defense-minded. The court held that the prosecutor's use of the dossier did not per se constitute a denial of the defendant's right to an impartial jury trial. It made these cogent observations:

> "The use of 'jury books' showing how members of a jury panel voted on previous juries has long existed in our courts. . . . Many an experienced trial lawyer will insist that knowing how a juror votes on one case will not give the slightest indication how he or she would vote on another, even if it is the same kind of case. If the facts differ, it is a different case, and different pressures, feelings, and sympathies come into being. . . .

> "Whether the United States District Attorney's staff in any district keeps a 'jury book' or not

(written or mental), whether it keeps a black-list of the few 'sympathetic jurors,' or a white list of the few 'hanging jurors,' cannot be considered error per se. Any group of attorneys associated together for any reason, who are constantly engaged in the trial of cases, will discuss and communicate as much information and knowledge as they possibly can to each other. Defense counsel ... will discuss and relay information about jurors — 'good' or 'bad,' as they may appear to interested partisans — just as the same information passes around with even greater frequency within the legal profession as to the judges themselves. ...." 259 F. 2d at 280.

The court in *Hamer* rejected the argument that under any and all circumstances, and irrespective of what the prosecutor's juror dossier contained, its use, unless shared with the accused, deprived her of a fair jury trial. It said that such an argument, carried to its ultimate conclusion, would mean that "no defendant could be prosecuted by a government attorney who had more information about how jurors on that panel had voted, in other cases, than his own counsel had." 259 F. 2d at 281. The court recognized that perfect equality in counsel could never be achieved; it concluded that in the final analysis it was the responsibility of the trial judge "to see that neither attorney has an unfair advantage over the other . . . ." *Id.* at 281.

It is generally held that a request for the production of documents in the possession or control of the State is ordinarily within the sound discretion of the trial court; and where inadequate reasons are assigned for disclosure, the request is properly denied as being in the nature of a "fishing expedition." *See McKenzie v. State,* 236 Md. 597, 204 A. 2d 678 (1964). From the dialogue which developed at the trial of the present case, it was readily apparent to the trial judge that the jury dossier consisted primarily of information compiled by the prosecutor from prior voir dire examinations and past voting records. While properly concluding that the appellant's assertion of an absolute right to inspect this data was not well

founded, the trial judge required disclosure of the criminal records of prospective jurors contained in the dossier; he also required that the prosecutor disclose any instances known to him in which a prospective juror may have lied under oath on his voir dire examination. He thus inferentially recognized, we think correctly, that a prosecutor is under a duty to disclose information within his knowledge which would show that a prospective juror holds a fixed prejudice or bias against an accused which would support a challenge for cause. It is not to be assumed, of course, that because no such information was revealed, it did, in fact, exist but was wrongfully withheld by the prosecutor. Nor can it be assumed that in the absence of disclosure of the dossier that an unbiased jury was not impaneled. As we recognized in *Davidson v. Miller,* 276 Md. 54, 344 A. 2d 422 (1975), an adequate voir dire examination will satisfactorily determine whether a prospective juror is prejudiced and therefore unable to render a fair and impartial verdict. The voir dire examination in this case was extensive and probing, more than adequate to uncover the existence of cause for disqualification.

While it may have been preferable had the trial judge reviewed the dossier *in camera,* even though not asked to do so, or included the dossier as part of the record on appellate review, we find no basis in the circumstances for reversal of the judgment of conviction because he did neither of these things.

*Judgment affirmed; costs to be paid by the appellant.*