# RUSSELL ELLIOTT TODD, JR. *v.*
# STATE OF MARYLAND

[No. 1050, September Term, 1974.]

*Decided September 9, 1975.*

128

The cause was argued before MOYLAN, MENCHINE and LOWE, JJ.

*William T. Wood* for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Steven Shaw, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

On August 27, 1974, Russell Elliott Todd, Jr. was convicted of armed robbery, use of a handgun in the commission of a felony and of carrying a handgun. He had been tried by a jury in the Circuit Court for Montgomery County. The trial judge ruled that the conviction for carrying a handgun was merged in the offense of using a handgun in the commission of a felony.

A motion in proper person for a new trial, received by the trial judge on September 3, 1974, was filed in the office of the Clerk of Court on September 5, 1974. The State filed a motion *ne recipiatur* as to the motion for a new trial, contending that the same had not been filed within three days after verdict as required by Maryland Rule 759. The trial judge granted the State's motion *ne recipiatur* upon the ground that the motion for a new trial was not timely filed.

Appellant then was sentenced to imprisonment for a conditional term of ten years under the provisions of Article 27, § 641A for the armed robbery offense and to

imprisonment for five years for the handgun offense, the sentences to run concurrently.

Appellant contends on appeal that the trial court was in error:

1. In refusing to hear appellant's motion for a new trial.
2. In submitting to the jury the question whether a $C.O._2$ pistol was a handgun within the meaning of Article 27, § 36B (d).
3. In admitting evidence of pretrial identification by photograph and permitting in-court identification at trial.

### Rejection of Motion for New Trial

Assuming that the motion for a new trial was filed at the time of its receipt by the trial judge on September 3, 1974, rather than at the time of its actual docketing and filing in the Clerk's office, it is plain that it was not filed within the time prescribed by Rule 567.[1] Rule 567 is made applicable to criminal trials by Rule 759.[2]

Testimony was taken at hearing upon the State's motion *ne recipiatur.* Appellant testified that he had completed the motion for a new trial on August 29, 1974 "to the best of [his] memory;" that he passed it along to an officer at the detention center on the same date; that he understood that outgoing mail is not mailed until the following day. Sgt. Sarah Boone of the detention center, in general confirmed the testimony of appellant.

---

1. Rule 567 in pertinent part reads as follows:

"a. *Motion—When to Be Filed.*

A motion for a new trial as to all or part of the matters in controversy shall be filed within three days after the reception of a verdict, or, in case of a special verdict or a trial by the court within three days after the entry of a judgment *nisi.*"

2. Rule 759 in pertinent part reads as follows:

"a. *Motion for New Trial.*

A motion for a new trial shall be made pursuant to Rule 567 (New Trial)."

130

The trial judge then rendered the following oral opinion:

"Gentlemen, the Court is of the opinion it lacks jurisdiction to entertain the motion for a new trial. The rule is clear that the motion for a new trial must be filed within three days of the verdict and in this case the verdict was returned on the twenty-seventh. So you would begin counting on the twenty-eighth and that would be the first day, the twenty-ninth would be the second day, and the thirtieth would be the final day for filing, and all of those were regular work days. There is no gap in the filing period. So by the close of business on the thirtieth there had to be filed with the Court, and I would have accepted filing with me as being sufficient. The man was represented by counsel at the time and he is presumed to have known what the law was and he did not get it filed. I have allowed adequate opportunity and a recess here this morning and even suggested further investigation to determine whether there was any willful effort on the part of any State official to delay the transmittal of this letter, which would possibly allow me to consider the motion for a new trial and I find no such, certainly no intentional holdup or delay in the transmittal of this man's mail, but rather handling in the regular course of business of the detention center and according to their own administrative procedures. Now the Court feels that their administrative procedures might be so blatantly improper as to amount to a denial of reasonable access to the Court, but I do not find that in this case. The defendant himself is very unsure as to the time when he may have handed this letter to one of the custodial personnel and indeed it may have been very late in the day on the twenty-ninth when he would not have expected it to be posted until the thirtieth. He made no special request that it be given any favorable handling or that it be hand-carried. He did not attempt to call his

attorney and ask him to come over and get it or to file a motion for a new trial on his behalf.

"The attorney knew that and certainly was charged with knowledge as was the defendant that he had three days in which to file the motion, and the motion was not timely filed, and I can find no intervention on the part of any State official which intentionally delayed or unreasonably delayed the transmittal of this document. It was simply too late."

The record fully supports the factual conclusions of the trial judge.* The case of *State v. Tull*, 240 Md. 49, 212 A. 2d 729, is dispositive of this issue. In *Tull* it was said at 52 [730]:

"Maryland Rule 759 a provides that a motion for a new trial in criminal cases, as in civil, 'shall be filed within three days after the reception of a verdict' (such a motion was duly filed within three days after the verdict in the original trial on June 6, 1962, and denied). We held in *Giles v. State*, 231 Md. 387, (in which the sequence of events was almost identical to that here, the second motion for a new trial having been made there some two months after the original judgment and sentence had been affirmed here) that the rule meant what it said and was valid. The apposite language in part was:

'Maryland Rule 567 a provides that a motion for a new trial "shall be filed within three days after the reception of a verdict" and subsection e of that Rule provides that "if a motion for a new trial be not made, within the time prescribed by section a * * * the Clerk shall enter a final judgment as of course." Since appellants' motion was not filed within three days after reception of the verdict, it was properly denied.'

---

* We note that counsel for Todd on appeal did not represent him at the trial below.

See also *Drehoff v. Warden,* 231 Md. 654, 656; *Cook v. State,* 225 Md. 603, 608; *Carr v. State,* 218 Md. 318, 320; *Johnson v. State,* 215 Md. 333, 336-337.

"The trial court had no power to grant a new trial under Rule 759 a."

The trial court was without power to consider the tardy motion for a new trial. There was no error in sustaining the State's motion *ne recipiatur* and the concomitant refusal to consider the appellant's motion for a new trial.

### The Weapon

At the time of his arrest a weapon was seized from the glove compartment of a motor vehicle appellant had been operating. The validity of the search and seizure is not contested. The seized weapon was offered by the State and was received in evidence over the objection of appellant. A State's witness had testified that the exhibit "looks like the gun he was pointing at me * * * the barrel looked like the other one. It was the same color."

The State now contends that conviction for the handgun offense could be justified and supported by the testimony of a witness who had described the weapon used in the robbery as a .45 calibre pistol. The propriety of such position ordinarily would be beyond cavil. Tangible evidence in the form of the weapon used in an offense certainly is not an essential to proof of the use of a weapon. In the subject case, however, the State offered the object in evidence. The sole basis for its admission was the implicit assurance of the State that it was *the* weapon used in the robbery. The State may not receive benefits accruing from introduction by it of such tangible evidence and thereafter repudiate the connection of that graphic material evidence and the offense it was offered to support. In such circumstances we believe that the issue whether the weapon falls within the purview of the handgun law is before us for decision.

Evidence as to the precise nature and operation of the

weapon was quite sparse, having been limited to the following:

> "THE COURT: Agent Johnson, are you familiar with the operation of this particular weapon you have been shown?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: How does it fire?
>
> THE WITNESS: $CO_2$ cartridge that is placed inside of the handle grips; there is a screw on the bottom which you tighten to engage it. It will fire a .22 caliber pellet. At the time I received it there was one pellet in it and the gun was charged.
>
> I subsequently, prior to taking it to court in the City of Falls Church, disarmed the weapon.
>
> THE COURT: It is the carbon dioxide which causes the pellet to go out of the gun?
>
> THE WITNESS: Yes, sir."

Appellant contends that the weapon does not fall within the meaning of "handgun" as the same was used in Article 27, § 36B. We do not agree.

The pertinent parts of Article 27 are as follows:

§ 36B

> "(d) *Unlawful use of handgun in commission of crime.* — Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor, be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years."

§ 36F (a)

"(a) The term 'handgun' as used in this subheading shall include any pistol, revolver, or other firearm capable of being concealed on the person, including a short-barreled shotgun and a short-barreled rifle as these terms are defined below, except it shall not include a shotgun, rifle or antique firearm as those terms are defined below."

The declared legislative policy appears as subsection (a) of § 36B and reads as follows:

"(a) *Declaration of policy.* — The General Assembly of Maryland hereby finds and declares that:

(i) There has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns;

(ii) The result has been a substantial increase in the number of persons killed or injured which is traceable, in large part, to the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity;

(iii) The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

(iv) Further regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens."

In the American Heritage Dictionary of the English Language (1973) appear the following definitions:

*Gun* — A weapon consisting essentially of a metal tube from which a projectile is fired at high velocity into a flat trajectory. A device that shoots a projectile.

> *Handgun*—A firearm that can be used with one hand; a pistol.
>
> *Firearm* — Any weapon capable of firing a missile, especially a pistol or rifle using an explosive charge as a propellant.
>
> *Missile* — Any object or weapon that is fired, thrown, dropped or otherwise projected at a target; projectile.

That the weapon in question is a gun within the cited definition is plain. That it may be carried and used in the hand is equally clear. The evidence is uncontradicted that the weapon was capable of firing a missile and that it had the outward appearance of a .45 calibre pistol. It was, in short, a handgun unless it was the legislative purpose and intent to have the handgun statute limited in its effect to those hand weapons from which a bullet or missile is ejected by an explosive charge.

We believe that the declaration of policy forming a part of the statute belies such purpose or intent. We regard that policy declaration to indicate an intent to include any hand weapon simulating the appearance of a pistol or revolver that is capable of discharging a missile by any method of propulsion. We note that § 36F (a), *supra,* declares that handgun shall *include* any pistol, revolver or other firearm. The subsection, in short, does not limit application of the statute to weapons in which the propulsive force is the explosion of gunpowder. It does not *exclude* weapons discharging missiles by other means.

The Attorney General of Maryland in 1954 and 1958 expressed the opinion that, "* * * Zip guns and $CO_2$ guns capable of firing a projectile are deadly weapons and that instruments operated by gas or $CO_2$ are proscribed by Section 57, Article 24, Baltimore City Code (1950 Ed.)" [3] See 43 Op. A. G. 268, 269.

There are cases in other jurisdictions that may be interpreted as declaring a contrary view.

---

**3.** This section placed certain restrictions upon the delivery to others of a "pistol or revolver."

In *People v. Schmidt*, 222 N.Y.S. 647 (S. Ct. App. Div. 1st Dept., 1927), wherein the statute proscribed possession of a "pistol, revolver or other firearm of a size which may be concealed upon the person" it was said at 649-50:

> "That a 'firearm' necessarily connotes the action of a chemical explosive such as gunpowder, which action is in the nature of combustion of some sort in a weapon, is doubtless the commonly accepted usage. The definition of a firearm commonly given is: 'A firearm is a weapon which acts by the force of gunpowder.' 40 Cyc. 852. In the Supreme Court of Alabama, in the case of Atwood v. State, 53 Ala. 508, 509, a statute reading 'a pistol, or firearms of any description,' was construed as referring to 'a weapon acting by the force of gunpowder.' 'A pistol,' said the court, 'is a small, light firearm.'

> "In Harris v. Cameron, 81 Wis. 239, on page 242, 51 N. W. 437 (29 Am. St. Rep. 891), in describing an air gun, the court said:

>> 'The power is air pressure, which is forced into a small space in the small barrel by a plunger; and by a movement of the trigger the compressed air escapes outwardly, and forces out the shot with considerable force.'

> "In holding that such a weapon was not to be described as a firearm, the court said:

>> 'These prohibited pistols or revolvers must be firearms; that is, "weapons which act by the force of gunpowder." The air gun or pistol is not prohibited. This air gun is not a gun or a weapon in the above signification of the words, but called a "gun," imitative only of a real gun.'

> "As was said by the Court of Appeals in the case of Cooper-Snell Co. v. State, 230 N. Y. 249, 255, 129 N. E. 893, 895:

>> 'One of the cardinal rules to be applied in

construing statutes is that they are to be read according to the natural and obvious import of their language, without resorting to a subtle or forced construction either limiting or extending their effect.'

"Under this principle, it is doubtless true that the usual and customary meaning of the word 'firearm' does not include an air pistol."

In *Tendler v. District of Columbia*, 50 A. 2d 263 (Mun. Ct. of App. D.C., 1946) under a statute providing: " 'It shall not be lawful for any person or persons to sell to any child or children under the age of 18 years firearms, ammunition, gunpowder, gun caps, or other explosives, or projectiles, darts, or other dangerous missiles in any quantity or quantities[,]' " it was said at page 263-64:

"The regulation, however, does not prohibit the sale of dangerous weapons; it prohibits only the sale of 'firearms, ammunition * * * or other explosives' or 'projectiles * * * or other dangerous missiles.'

"It seems to us obvious that an air pistol is not a 'firearm.' 'That a "firearm" necessarily connotes the action of a chemical explosive such as gunpowder, which action is in the nature of combustion of some sort in a weapon, is doubtless the commonly accepted usage.' People v. Schmidt, 221 App. Div. 77, 222 N.Y.S. 647, 649. An air pistol is not a 'missile'; neither is it a 'projectile', which is defined by Webster's New International Dictionary as 'a body projected by exterior force, and continuing in motion by its own inertia; specifically, a missile for a firearm or cannon.' "

In *Thompson v. State*, 488 P. 2d 944 (Ct. of Crim. App., Okla, 1971), wherein the statute prohibited the carrying of "any pistol, imitation or homemade pistol * * * or any other dangerous or deadly firearm" the Court said at 947:

"This Section prohibits the carrying of 'any

pistol, imitation or homemade pistol * * * or any other dangerous or deadly firearm.' It is a restriction on carrying firearms and not so broad as to encompass all weapons. As stated in Washington v. State, supra: '§ 1283 * * * applies only to firearms and not weapons in general.' The language 'or any other dangerous or deadly firearm' limits and restricts the word 'pistol' to only firearms, and 'imitation' or 'homemade' refers to the type or kind of firearm."

The Court added at 948:

"We, therefore, hold that an air gun, as the Daisy $CO_2$ Air Compressor Pistol herein, is not a firearm; and does not come within the meaning of 21 O.S. 1961 § 1283, which prohibits felons from carrying firearms."

We conclude that the decisions in *Schmidt, Tendler* and *Thompson,* all supra, turned upon legislative use in the respective statutes of the word "firearm" as a limiting word specifically restricting the breadth and scope of the statutes. We believe that legislative use of the word "handgun" rather than the more restrictive word "firearm" was a matter of deliberate choice. The word "handgun" must be given a broader interpretation and would encompass the weapon admitted in evidence in the subject case.

We find no error in the court's refusal to instruct the jury that the weapon offered as an exhibit by the State was not a handgun within the meaning of the statute.

### Pretrial and In-Court Identifications

When trial counsel for appellant indicated he would contend that pretrial and proposed in-court identifications were tainted, the trial judge suspended the proceedings before the jury for the taking of testimony upon the issue out of its presence. This accorded with the procedures approved in *Smith and Samuels v. State,* 6 Md. App. 59, 250 A. 2d 285, after the decision in *Simmons v. U. S.,* 390 U. S. 377, 19 L.Ed.2d 124.

At the conclusion of testimony on the issue, the trial judge declared, *inter alia*: (a) that the "opportunity to observe the person who perpetrated the armed robbery was perhaps as significant as one is going to encounter in an armed robbery case; * * * [and] add up to an extraordinarily good opportunity to observe and form an impression in one's mind"; (b) that the witnesses had been presented "an excellent array of identification photographs * * * [that were] extraordinarily fair in their selection"; and (c) that the composite made from the description of one eyewitness and shown to a second witness was "for entirely legitimate and understandable purpose of first asking her the true likeness of the person she had seen and any changes she would have made, all toward influencing no judgment but getting the best composite available for investigative means." He added: "We don't think anything was done with this composite and the evidence * * * before us that would indicate even *prima facie* that the viewing procedure for the photographs was illegal."

The trial court then said: "* * * there is no such showing of impermissible suggestiveness which would give rise to a very substantial likelihood of irreparable misidentification" adding that he left to defense counsel the "tactical determination to bring to the attention of the jury such of these facts and circumstances as may reasonably bear upon the weight to be given to the identifications and that while this ruling is final as to the admissibility of the evidence, you are not precluded from introducing essentially the same testimony insofar as it may affect the weight." The record abundantly supports the trial court's factual determinations and fully justifies the conclusion he reached upon those facts.

A contention that the statement by a police officer to a witness that: "I know the guy is in there" (included among nine photographs handed to the witness) served to vitiate her identification is without merit. The police officer had testified that he had made the comment in a joking manner. The witness herself testified that she did not even remember such a statement having been made by the officer but that in

any event she had picked out the photograph of the appellant "* * * because it just came to me. I just remembered his face." She said she had not felt obliged to pick out any photograph because of anything the detective said. The trial judge, after pointing out that the witness in question had testified that her identification was based upon what she saw on the night of the robbery and upon nothing else, said that he "accepts that testimony as being entirely true and credible." He then added: "I think the statement made by the officer was unfortunate [but] it is not such as would cause this procedure to be tainted and cause this Court to declare that this was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." We agree. *Howell v. State*, 18 Md. App. 429, 435, 306 A. 2d 554, 559.

Appellant's suggestion that the witnesses were uncertain in their photographic, lineup and in-court identifications was a matter for resolution by the trier of facts. *Felder v. State*, 6 Md. App. 212, 250 A. 2d 666, 668, and cases therein cited.

We find no error in the admission of the identification evidence.

The appellant, in proper person, has attempted to raise an additional issue that involves a question of the competency of trial counsel. Such a question, not raised below, will not be heard on direct appeal. Maryland Rule 1085; *Spease and Ross v. State*, 21 Md. App. 269, 301, 319 A. 2d 560, 577.

*Judgments affirmed.*