## ROBERT TYRONE TISDALE *v.* STATE OF MARYLAND

[No. 346, September Term, 1975.]

*Decided February 27, 1976.*

The cause was argued before MORTON, DAVIDSON and MOORE, JJ.

*Leonard J. Sperling, Assigned Public Defender,* for appellant.

*John A. Austin, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City, Marshall Feldman* and *Charles Chiapparelli, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Appellant, Robert Tyrone Tisdale, was convicted by a jury in the Criminal Court of Baltimore, Hargrove, J. presiding, of robbery with a deadly weapon and the use of a handgun in the commission of a felony. He was thereafter sentenced to terms of 15 years and 5 years, respectively, the sentences to

run concurrently. Appellant contends here that the trial court committed reversible error when it:

1) Refused to strike for cause two jurors who admitted on *voir dire* that they would give more weight to the testimony of a police officer merely because he was a police officer;

2) Denied appellant's motions to dismiss the handgun count and refused to grant appellant's instruction concerning the definition of a handgun;

3) Refused to give instructions regarding the voluntariness of appellant's statement to the police;

4) Refused to permit introduction of certain testimony during the cross-examination of Officer Watkins for the reason that it would be hearsay;

5) Refused to give a limiting instruction on the burden of proof during the course of the opening statement by the State; and

6) Denied appellant's motion for a continuance to obtain counsel of his choice.

Testimony was produced at trial from which the jury could find that the facts were as follows: On October 2, 1974, at approximately 12:20 A.M., the victim, William Cunningham, was operating his taxicab in the vicinity of Warwick and North Avenues, Baltimore, Maryland, and picked up appellant as a fare. Upon reaching his destination at the 1500 block of Whitelock Street, appellant alighted from the taxicab, pulled a gun out of his pocket and demanded Mr. Cunningham's money. He then took eight or nine dollars from Cunningham's shirt pocket, disabled his radio and told him to drive off. Mr. Cunningham drove one quarter block, stopped the cab, took a revolver from under the seat and began to pursue appellant, firing several shots before overtaking and apprehending him.

Officer Boysie Watkins, on routine patrol, came upon the

scene and observed Mr. Cunningham holding the appellant against the side of his cab. Mr. Cunningham explained that he had just been robbed. At that point, according to the testimony of the officer and the victim, appellant made an utterance in which he admitted the robbery. He was then arrested. Appellant's weapon was described as a .22 caliber gas pistol. It had been submitted to the police ballistics laboratory but was not processed because it was a "blank gun."

## 1. Refusal To Strike Two Jurors For Cause

On *voir dire* the prospective jurors were asked the following questions by the court:

> "Now, are there any of you here who are inclined or would be inclined to give more weight to a police officer's testimony merely because he is a police officer than the testimony of any other witness in the case?"

Thereupon, a juror from Judge Ross' panel who identified himself as Markland Boyce, juror 21, responded:

> "I would give more weight to it."

A second juror then arose and gave his name as "Louis Schneider,[1] Judge Ross' panel, number 10." Counsel for defendant challenged these two jurors for cause. The court ruled "[T]hat is not enough to disqualify . . . I think you have to use your strikes. . . ." He also observed that each juror challenged for cause had "indicated there's no reason at all that he would not render a fair and impartial verdict based on the evidence."

Appellant was entitled to exercise twenty peremptory challenges. Maryland Rule 746 a. *Turpin v. State,* 55 Md. 462 (1881); *Johnson v. State,* 9 Md. App. 143, 262 A. 2d 792

---

1. *Voir dire* interrogation also revealed that Mr. Schneider once drove a Yellow Cab and that he had a nephew who was an Assistant State's Attorney.

(1970). As the Court of Appeals stated in *Brice v. State*, 264 Md. 352, 366, 286 A. 2d 132 (1972):

> "[T]he right to exercise the peremptory strike is unfettered and may be exercised by either party for any reason or indeed for no reason. Hunch, passing impression, appearance of the prospective juror, or any other consideration may lead to the exercise of the peremptory challenge and no inquiry may be made in regard to why it is exercised."

While the challenge for cause permits rejection of a juror only on the specified, provable and legally cognizable basis of partiality, the peremptory challenge permits rejection for an imagined partiality. *See, Johnson v. State, supra,* quoting extensively from *Swain v. Alabama,* 380 U. S. 202 (1965).

A challenge for cause is proper where it is shown that the mind of a juror is not free to hear and impartially consider the evidence and render a verdict thereon. *Garlitz v. State,* 71 Md. 293, 300, 18 A. 39 (1889). The fact that a prospective juror would give more weight to the testimony of a police officer plainly indicates his lack of impartiality — assurances to the court of an ability to weigh the evidence impartially being patently inconsistent — and the two challenges for cause in the proceedings below should have been sustained. *State v. Jones,* 282 So. 2d 422 (La. 1973), on rehearing at 430; *Harvin v. United States,* 297 A. 2d 774, 778 (D.C. App. 1972); *Chavez v. United States,* 258 F. 2d 816 (10th Cir. 1958). In *Harvin,* the Court observed:

> "[T]he very purpose of the *voir dire* is to permit counsel to satisfy themselves that they have an impartial jury. Nothing could be plainer than that a predisposition to attach greater or lesser credence to any witnesses' testimony is inconsistent with this fundament of our legal system. . . ." (Footnote omitted.)

And in *Chavez, supra,* the Court stated at p. 819:

> "But the inquiry should be directed to the question of whether the prospective juror would give greater

or less weight to the testimony of a law enforcement officer than to that of another witness *simply because of his official character.* A defendant cannot be fairly tried by a juror who would be inclined to give unqualified credence to a law enforcement officer *simply because he is an officer.*" (Emphasis in original.)

For the view that prospective jurors need not be excused for cause when they respond that they would believe more readily a police officer when he is testifying "as to matters for which he is trained," *see Parson v. State*, 275 A. 2d 777 (Del. Supr. 1971) and, with respect generally to *voir dire* interrogation concerning prejudice as to certain witnesses, see 47 Am. Jur. 2d, *Jury*, Sec. 285.

Since appellant was required to use peremptory challenges in order to eliminate the two jurors who had properly been challenged for cause, his total number of peremptories was effectively reduced from 20 to 18. The failure of the trial court to allow the appellant 20 peremptory strikes was reversible error. *Pearson v. State*, 15 Md. App. 462, 291 A. 2d 167 (1972); *Swain v. Alabama, supra*. No showing of prejudice is necessary. As the Supreme Court stated in *Swain*, at 219:

> "The persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury. . . . Although '[t]here is nothing in the Constitution of the United States which requires the Congress [or the States] to grant peremptory challenges,' . . . nonetheless the challenge is 'one of the most important of the rights secured to the accused,' . . . *The denial or impairment of the right is reversible error without a showing of prejudice.*" (Citations omitted.) (Emphasis added.)

We observe, although the subject is not addressed in appellee's brief, that trial counsel for appellant stated in response to an inquiry by the clerk before the jury was

sworn, "The panel is acceptable to the defense." The State also replied, "Acceptable," and the jury was then sworn. No waiver of appellant's challenges for cause occurred. His objection to the two jurors, for cause, had been clearly stated on the record and counsel's response — that the jury ultimately selected was "acceptable" — was merely obedient to the court's rulings and obviously not a withdrawal of the request, timely made, that the jurors be excused for cause.

The situation here is, therefore, distinguishable from that presented in *Neusbaum v. State,* 156 Md. 149, 143 A. 872 (1928) where defense counsel was given the opportunity for an entirely new panel but refused it and elected to go forward with a panel already chosen, some of the members of which had heard a prejudicial remark by the prosecutor. It is also distinguishable from the more recent case of *Glover, Robinson and Gilmore v. State,* 273 Md. 448, 330 A. 2d 201 (1975), citing *Neusbaum,* which involved an objection that talesmen were not selected in accordance with Code, Art. 51, Sec. 9 (e). The Court found it unnecessary to consider that question, ruling the objection had been waived when defense counsel, at the court's suggestion, deliberately consulted with each of the defendants as to whether they were satisfied with the jury and then announced to the court, ". . . the Defendants have expressed that they are satisfied with the jury." [2]

We note in this case, furthermore, that the claim of error was diligently pursued in trial counsel's motion for a new trial and in oral argument on that motion.

Accordingly, we must reverse on this ground alone. In addition, as will next be shown, there are independent grounds for reversal of appellant's conviction of a handgun violation.

---

2. Under Rule 746 c, a peremptory challenge "may be exercised as a matter of right until the time the jury is sworn." Even jurymen who have been selected and accepted and are seated in the jury box, may be challenged peremptorily up to the time of swearing. Whittemore v. State, 151 Md. 309, 134 A. 322 (1926); Kelley v. State, 12 Md. App. 251, 278 A. 2d 87 (1971). Under Rule 747, all jurors and alternate jurors must be sworn at the same time.

## 2. *Handgun Violation*

The victim, William Cunningham, testified that at the time of the robbery the appellant pointed a pistol at his head and demanded his money. The weapon was, as previously indicated, subsequently taken from the appellant by the victim after the latter armed himself with his own revolver and gave pursuit. At trial, during the testimony of Officer Watkins, the "gun" was described as a .22 caliber gas pistol and was received in evidence over objection. The officer also testified that it was not processed by the Ballistics Unit because it was a "blank gun." There was no other testimony — expert testimony or otherwise — adduced by the prosecution or the defense with respect to the precise nature of the weapon or the manner in which it was designed to operate, if at all.

On appeal it is contended that the court erred in denying appellant's motion to dismiss the handgun count prior to trial, in refusing to grant appellant's requested instruction concerning the handgun count, in denying appellant's motion for judgment of acquittal and appellant's motion for a new trial on that count. The question has been abundantly preserved for our review.

Appellant's requested instruction was as follows:

"You are instructed that to convict a Defendant of the charge of unlawful use of a handgun in commission of a crime of violence the State must prove beyond a reasonable doubt that a handgun was used. *A handgun is defined as 'any pistol, revolver or other firearm capable of being concealed on the person.' A firearm has been defined as a 'gun capable of firing shot, shell or bullets by the action of gunpowder exploded within it.'* If you find from all the evidence in this case that the Defendant was carrying a blank gun at the time of the alleged incident, and that a blank gun is not a handgun, then you must find him not guilty of the charge of use of a handgun in commission of a crime of violence." (Emphasis added.)

This instruction was denied and the court instead instructed as follows with respect to the definition of a handgun:

> "Now I should also advise you that the term handgun under the law of Maryland includes a pistol or revolver and also Maryland law defines *a firearm or a handgun as any weapon,* [having] *a barrel less than 12 inches in length, which includes a signal, a starter or blank pistol. Under the law of Maryland . . . a pistol includes a signal gun, a starter gun or a blank pistol.*" (Emphasis added.)

It is quite apparent that the court was incorporating into its instruction the language of Md. Code Annot., Art. 27, Section 441 (c) which defines "pistol or revolver" as "any firearm with barrel less than twelve inches in length, including signal, starter, and blank pistols."

The crime alleged against appellant in the challenged count of the information is, of course, that of unlawful use of a handgun in the commission of any felony or a crime of violence as defined in Section 441 of Art. 27. The offense is thus described in Art. 27, Section 36B, subsection (d):

> "Unlawful use of handgun in commission of crime — *Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article,* shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor, be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years." (Emphasis added.)

It is to be noted that the only reference to Section 441 in the handgun statute is in the above subsection which incorporates only the definition in Section 441 of a "crime of

violence." The term *handgun* is specifically defined in Art. 27, Section 36F as follows:

> "(a) The term 'handgun' as used in this subheading shall include *any pistol, revolver, or other firearm capable of being concealed on the person, including a short-barreled shotgun and a short-barreled rifle as these terms are defined below,* except it shall not include a shotgun, rifle or antique firearm as those terms are defined below." (Emphasis added.)

While handgun is thus defined to include any "pistol, revolver, or other firearm . . .", Section 441 (c) which contains a definition of the term "pistol or revolver" is not mentioned. We think it clear that the definition of "pistol or revolver" contained in Section 441 may not be incorporated into the definition of handgun in Section 36F. Different offenses are involved. Sections 441, *et seq.* regulate the registration and sale of firearms and thus possess an altogether different objective from the handgun law. *Appellant was charged with an offense under the latter and not the former.* It was therefore an error for the trial court, in his instructions to the jury, to use the language of Section 441 (c) defining the term "pistol or revolver" when appellant stood accused under Section 36B.

On the other hand, the court correctly rejected the instruction requested by the appellant, the burden of which was that a handgun is a firearm "capable of firing shot, shell or bullets by the action of gunpowder exploded within it." As this Court held in *Todd v. State,* 28 Md. App. 127, 343 A. 2d 890 (1975), the legislative intent of the handgun statute was "to include any hand weapon simulating the appearance of a pistol or revolver that is capable of discharging a missile by *any* method of propulsion." In *Todd,* the weapon involved was described by a witness as a .45 caliber pistol. While the evidence as to its precise nature and operation was, in the words of Judge Menchine, "quite sparse," there was expert testimony that it was fired by a $CO_2$ cartridge. A colloquy

between the trial judge and the witness revealed its method of operation:

"THE COURT: How does it fire?

"THE WITNESS: $CO_2$ cartridge that is placed inside of the handle grips; there is a screw on the bottom which you tighten to engage it. It will fire a .22 caliber pellet. At the time I received it there was one pellet in it and the gun was charged. I subsequently, prior to taking it to court in the City of Falls Church, disarmed the weapon.

"THE COURT: It is the carbon dioxide which causes the pellet to go out of the gun?

"THE WITNESS: Yes, sir."

More recently, we had occasion to follow the rule in *Todd* in the case of *Howell and Kaschenback v. State*, 29 Md. App. 646, 350 A. 2d 145 (1976), where Chief Judge Orth, writing for the Court, traced the history and background of the Maryland handgun statute, explicated the rule in *Todd* and held that a tear gas gun was a handgun within the contemplation of Code, Art. 27, Section 36B (d). In stating the decision, Chief Judge Orth observed:

"In *Todd*, it was manifest that the weapon propelled a projectile, and the issue turned on the nature of the propellant. In the case *sub judice*, it is manifest that the propellant was an explosive charge, and the issue turns on whether the weapon propelled a projectile. The evidence adduced was legally sufficient to show, in light of the definitions above set out, that the weapon here propelled projectiles, and the expert witness so testified. 'Tear gas', he explained, 'is a rather large quantity of very fine particles, it's not actually a gas at all. And to fire it, firing would expel these *projectiles*, which are very highly irritating to the eyes.' (emphasis added). We think that the size of the projectile is of no moment. Whether it be as big as an artillery shell or as small as a subatomic particle, it is still a projectile.

"That the weapon in question was a gun is plain. That it may be carried and used in the hand is equally clear; so it was a handgun. It projected an object by means of an explosive force, and it had the appearance of a .22 caliber pistol. We have found that what it propelled were projectiles or missiles. It was capable of inflicting serious injury; 'it would be', the expert said, 'extremely destructive to an individual's eyes.' In short, its characteristics were such as to meet all the requirements of a handgun within the contemplation of the 'handgun' statute. We hold that its use in the commission of a felony or a crime of violence as defined by art. 27, § 441 was a misdemeanor proscribed by § 36B (d)." (Footnotes omitted.)

In the instant case the description of the instrument involved is not "sparse" — it is altogether lacking. We have related the full extent of the testimony bearing upon the description of the weapon. It is our conclusion that while neither the court nor the appellant was correct in the definition of handgun under Section 36B, the question of reversal or affirmance of the conviction of a handgun violation turns here on the question of the sufficiency of the evidence. Upon our review of the record we find that there was a gross insufficiency of evidence as to the nature of the weapon and that the conviction under this count must also be reversed and remanded for a new trial. *Gray v. State,* 254 Md. 385, 255 A. 2d 5 (1969), *cert. denied,* 397 U. S. 944 (1970).[3]

Because a retrial of this case will be ordered, we find it appropriate to consider also appellant's third and fourth assignments of error.

---

**3.** As we had occasion to observe in the recent case of Deaver and Digoia v. State, 30 Md. App. 263 (1976), footnote 2, we recognize that a retrial under this count may pose a serious question of double jeopardy. See, Benton v. Maryland, 395 U. S. 784 (1955).

### 3. *Refusal of Voluntariness Instruction*

Officer Watkins testified that when he arrived at the scene and observed Mr. Cunningham, the taxicab driver, holding appellant at bay, he inquired "what was going on" and that Cunningham stated, "This guy just robbed me." The appellant, according to the police officer, responded, "Yes, I robbed him but you all don't understand."

Mr. Cunningham's version of appellant's statement was slightly different. He testified that appellant stated, "I robbed him but don't know why."

A pretrial motion was filed to suppress appellant's statement. Judge Hargrove denied it and, we think, his decision was correct. Thereafter, the court refused to instruct the jury on the question of the "voluntariness" of the appellant's statement and also refused to grant an instruction that the jury did not have to believe that appellant had made any statement at all. We find that the court was again correct.

In the first place, there was no custodial interrogation here, and appellant's statement, if made and however made, was clearly a spontaneous utterance, admissible as such. *Miranda* would not have been applicable even if appellant had then been in custody. *Cummings v. State,* 27 Md. App. 361, 341 A. 2d 294 (1975). The trial court correctly ruled that appellant's statement was admissible and there was no need to submit to the jury the issue of voluntariness.

Appellant's alternative, if not inconsistent, contention that the court should have granted an instruction that the jury need not find that appellant made *any* statement that he committed the robbery, is also without merit. As the trial court remarked to appellant's counsel, "I gave them an instruction on credibility . . . pretty much the same thing you are asking." We have examined the court's instructions in their entirety. An instruction concerning the credibility of the witnesses was carefully set forth, and we find no error in the denial by the court of the specific instruction requested.

4. *Attempted Impeachment of Victim*

During cross-examination of Officer Watkins, the court sustained objections by the State to defense counsel's inquiries concerning statements allegedly made by the victim and contained in the officer's written report which he had consulted during direct examination. The trial court ruled that any such statements would be hearsay and inadmissible.

The apparent purpose of defense counsel was to show that a statement or statements by the victim, Mr. Cunningham, to the police may have been inconsistent with his testimony at trial. In a word, the defense was endeavoring to impeach the victim by prior inconsistent statements. Hearsay was not involved. McCormick, *Evidence* § 225 (1 ed. 1964). *Frey v. State*, 3 Md. App. 38, 48, 237 A. 2d 774 (1968).

Nevertheless, on the record before us, we cannot hold that the trial court's refusal to permit this line of inquiry was erroneous. No proffer was made to the trial judge concerning the nature of the victim's prior inconsistent statements to the police officer — nor was any foundation laid in defense counsel's cross-examination of Mr. Cunningham, other than to elicit testimony that his statements to the police were truthful. Accordingly, appellant failed to preserve this objection for appellate review. *Magness v. State*, 2 Md. App. 320, 234 A. 2d 481 (1967); Maryland Rule 1085.

> *Judgments reversed; case remanded for a new trial.*