LEON GREGORY JOHNSON *v.* STATE OF MARYLAND

[No. 511, September Term, 1979.]

*Decided February 13, 1980.*

516

The cause was submitted on briefs to MORTON, THOMPSON and LOWE, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Victoria A. Salner, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Valerie A. Leonhart, Assistant Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Steven Scheinin, Assistant State's Attorney for Baltimore County,* for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant, Leon Gregory Johnson, was convicted by a jury sitting in the Circuit Court for Baltimore County (Land, J., presiding) of armed robbery (art. 27, § 488) and the use of a handgun in a crime of violence (art. 27, § 36B (d)). He was sentenced to ten years for the armed robbery and five years for the handgun violation, the latter sentence to be served consecutively to the first. On appeal he questions the sufficiency of the evidence for the handgun violation and the propriety of four decisions by the trial judge: his refusal to grant a change of venue, his refusal to strike a certain juror, his lack of a ruling on a motion to suppress and his refusal to allow appellant to discharge his court appointed counsel.

## Sufficiency of the Evidence

The evidence consisted of testimony of two eyewitnesses. They were both employees of a Pantry Pride store and were in the office of that establishment on the day of the crime. One of them, Robin Litz, was working the check cashing window. She testified:

> "I was standing at the check cashing window, and this gentleman came up and I asked if I could help

him. He said give me your money, and I looked at him. I leaned over to look over the ledge to see if he had a check. That's when he pulled the gun, and he asked me to give him his money and he gave me a blue duffle bag to put the money in.

. . .

Q. What was the color of the gun, do you know?

A. It was like a silver gray.

Q. And how much of the gun could you see?

A. Well, he pulled it out — and I don't know if it was under the bag or his coat. I saw like where you put the bullets in, and then what you shoot out of."

Ms. Litz identified the appellant in court as the robber.

The other eyewitness, George Krause, was not on duty but was standing next to Ms. Litz at the time of the crime. He testified:

". . . I was in the office talking to Mr. Pogach, and approximately at that time a gentleman came up and pointed a gun at Robin and asked for all of the money.

Q. Okay. Now, how much of this could you see and hear from where you were standing?

A. Well, I was approximately three to four feet behind Robin, and Robin drew my attention. I don't know how long the gentleman was there, but she drew my attention, and I saw pretty much. I saw Robin give him the money. I could not see — I could not see the gun, but I could see his face and approximately down to his chest, and I could see Robin fill the bag full."

Mr. Krause also made an in court identification of appellant as the robber. The gun was not introduced into evidence.

Appellant contends that the testimony was insufficient to establish beyond a reasonable doubt that the gun was a

"handgun" as that term is used in art. 27, § 36B (d). We disagree. Article 27, § 36F (a) defines a "handgun" as: "any pistol, revolver or other firearm capable of being concealed on the person . . . ." In *Howell v. State,* 278 Md. 389, 396 (1976), the Court of Appeals concluded that:

> "to be a firearm it must propel a missile by gunpowder or some such similar explosive . . . ."

Appellant relies on *Tisdale v. State,* 30 Md. App. 334 (1976) and *Pharr v. State,* 36 Md. App. 615 (1977), *cert. denied,* 281 Md. 742 (1979). In *Tisdale* we reversed a handgun conviction because the weapon there was described as a ".22 calibre gas pistol," a "blank gun." 30 Md. App. at 341. We held that this was insufficient evidence "as to the nature of the weapon." 30 Md. App. at 345. In *Pharr* we reversed another handgun conviction because, although the victim had testified her assailant had used a "silver handgun," the defendant had confessed to having (and, we infer, using) a "silver blank gun." 36 Md. App. at 632.

In the instant case the uncontradicted testimony of Ms. Litz was that appellant pulled a gun from either his duffle bag or his coat; and that she knew it was a gun because she could see where "you put the bullets in" and "what you shoot out of." Unlike the situation in *Tisdale* and *Pharr,* there is no testimony to indicate that the weapon here may have been a blank gun and not a "firearm," outside the scope of § 36F, as defined by *Howell.*

Rather, the situation is more properly analogous to that in *Couplin v. State,* 37 Md. App. 567 (1977). There the victim gave an imprecise description of the weapon ("It had two barrels. It was a handgun and that's about it." 37 Md. App. at 576), which was not introduced into evidence. We said, in affirming the handgun conviction:

> "In *Todd* [*v. State,* 28 Md. App. 127 (1975)], this Court stated at 28 Md. App. 132 that '[t]angible evidence in the form of the weapon used in an offense is not an essential to proof of the use of a weapon.' *A*

*fortiori,* such proof may rest upon extrinsic evidence as to the nature of the weapon." 37 Md. App. at 578.

In this case the uncontradicted extrinsic evidence as to the nature of the weapon is that it was a firearm capable of being concealed in appellant's coat or duffle bag. As such it was sufficient to convince the trier of fact beyond a reasonable doubt that it was a handgun within the scope of § 36B.

## Venue

Prior to the trial appellant moved for a change of venue to Baltimore City because he believed that the ratio of black people to white people on the petit jury panels in Baltimore County was disproportionately small, a problem which he believed would be rectified in Baltimore City.

If this were all that appellant contended we would have no problem affirming the trial judge's denial of his motion on the basis of *Garland v. State,* 34 Md. App. 258 (1976). In *Garland* we held that neither the defense nor the State may have a change of venue in order to be tried by a more desirable "peer group" that makes up the jury. 34 Md. App. at 266.

But this is not all that appellant contends. His motion for a change of venue was based upon an alleged constitutional defect in the petit jury. He relied on the testimony of Nelson Carlisle, Jury Commissioner for Baltimore County. Mr. Carlisle testified that accurate figures were not available, but that in his opinion about ten percent of the members of petit jury panels were black. Appellant contends that this shows an unconstitutional underrepresentation of blacks, proscribed by *Castaneda v. Partida,* 430 U.S. 482 (1977), and *Peters v. Kiff,* 407 U.S. 493 (1972).

The rule of *Castaneda* states:

"Thus, in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the

procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. This method of proof, sometimes called the 'rule of exclusion' has been held to be available as a method of proving discrimination in jury selection against a delineated class. Finally, as noted above, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case." (Footnote and citations omitted.) 430 U.S. 482 at 494-95.

This rule was recently affirmed in *Rose v. Mitchell,* 443 U.S. 545, 99 S. Ct. 2993, 3005 (1979). In *Rose* the Supreme Court found that under the *Castaneda* criteria the respondents had failed to make out a prima facie case of discrimination against grand jury foremen in Tennessee. The evidence had consisted of the testimony of three foremen, none of whom could remember any other foremen who were black. This evidence was insufficient because it did not cover a significant period of time, was subjective and did not include the total number of foremen appointed in that county during the critical period of time. 99 S. Ct. at 3007-3008.

The evidence in the instant case consisted solely of the opinion of the jury commissioner as to the relative amount of blacks empanelled on petit juries over a three month period. Like the evidence in *Rose,* it is subjective (i.e., the impressions of one man). In fact, Mr. Carlisle testified that it

was not possible to make an objective analysis because no statistics were kept. Furthermore, the evidence covers only a three month period, less than the time involved in *Rose,* which was held to be inadequate. And finally, there is no evidence at all as to what proportion of Baltimore County's total population is made up of blacks. Thus, even if we assume the accuracy of Mr. Carlisle's estimate that ten percent of the petit jurors were black, there is no way to ascertain whether that constitutes an underrepresentation. Thus, appellant has failed to make a prima facie case of substantial underrepresentation as required by *Castaneda* and *Rose.* In fact, appellant has failed to show *any* underrepresentation. The trial judge correctly denied the motion.

### Failure to Strike Juror

Appellant contends that the trial court erred in failing to strike one of the jurors after she admitted she shopped in the store where the robbery occurred and that she recognized one of the witnesses. The juror also stated unequivocally that despite this association she would not have any difficulty rendering a fair and impartial verdict.

The rule is that a "relationship between a juror and a witness for one of the parties does not disqualify the juror in the absence of an affirmative showing of prejudice." *Slicer v. Griffith,* 27 Md. App. 502, 513 (1975), *cert. denied,* 276 Md. 749 (1975). *See Bristow v. State,* 242 Md. 283, 285-86 (1965). In this case there was no showing of prejudice and the trial judge's decision was proper.

### Lack of Ruling on Motion to Suppress

At the close of the State's evidence at the trial, appellant made the following statement on his own behalf:

"THE DEFENDANT: I would like to state at this time that it is certain information that's concerning this case I have not even had access to the case too. I have written Mr. King [defendant's counsel] several

letters asking him for personal copies and other things regarding the case. I have never had this information. I have filed a Motion for Discovery for this information from the police report. I am speaking of the police report that I had no knowledge of until today, and only the little what Mr. King read to me personally. I had not read this paper. This is the thing about the Motion to Suppress the lineup as evidence. I was under the impression we were going to hear from that before the witnesses were even brought in.

Now, if we are trying it here, I want to hear the motion, but the Jury has already heard the motions.

MR. KING: Mr. Johnson would like to discharge me as his attorney at this time. That is the gist of it, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Well, I will deny your motion, sir. You can't do that in the middle of the trial."

Appellant now claims that these incoherent remarks constituted both a motion to suppress the identification evidence and a motion to dispense with counsel and proceed *pro se.*

The purported motion to suppress the identification was based upon an allegedly tainted pretrial identification of appellant at a lineup. The trial judge did not rule on this motion and neither appellant nor his counsel ever brought the lack of ruling to the judge's attention. Appellant contends that constituted error under *Saunders v. State,* 8 Md. App. 143 (1969), which held that a failure to rule on a pretrial motion is error.

In the instant case there was no pretrial motion to suppress identification evidence. Appellant's *pro se* motion was the first time in the course of the trial that the subject arose. Maryland Rule 736 a 3 requires that a motion asserting an unlawful pretrial identification be raised within the time limits described by 736 b. Since appellant's motion was raised at trial on March 19, 1979, more than thirty days after his

appearance before the court pursuant to Rule 723, appellant's motion was waived under Rule 736. Even without Rule 736 there would be no error here because neither appellant nor his counsel brought the lack of a ruling to the trial judge's attention. *See White v. State,* 23 Md. App. 151, 156 (1974), *cert. denied,* 273 Md. 723 (1975), *Alston v. State,* 11 Md. App. 624, 629 (1971), *cert. denied,* 262 Md. 745 (1971).

### Motion to Proceed Pro Se

Appellant also contends that under *Faretta v. California,* 422 U.S. 806 (1975), it was error for the trial judge not to allow him to represent himself, after he so requested in the previously quoted remarks.

We do not believe that appellant's statement indicates a motion to proceed *pro se.* In fact, it does not even express a desire to discharge his counsel (that interpretation was supplied by appellant's attorney, to which appellant agreed). The judge disallowed the motion and made the following comments:

"I think counsel has done his best. I am not just praising Mr. King, but he is an expert trial counsel. He asked the questions that he thought are proper at this point, and you can't, or anyway I'm not going to let you. We can't change that. You can't in the middle of the trial *change* lawyers.

We are here to give you a fair trial. We try to do our best. We brought in some fifty people at the expense of the taxpayers and went through the voir dire questions, and went through the whole procedure, and the State has put on its case. Now, at the end of the case, you can't say that you want to stop because you think things aren't going the way you want them to.

I still don't know what the verdict is going to be. Nobody has any idea or knows what the Jury will do. They may not be convinced beyond a reasonable doubt and may not believe it. They may not believe the two witnesses. That is the point. You have given

me no reason why I should allow counsel to be dismissed in the case, so I would have to deny your motion." (Emphasis added.)

Neither appellant nor his attorney said anything to correct the trial judge's obvious and understandable impression that appellant wanted to *change* attorneys; he did not express a desire to proceed *pro se.*

*Faretta v. California, supra,* held that there is a constitutional right to self-representation. *Snead v. State,* 286 Md. 122 (1979), held that when a defendant expresses a desire to represent himself before the trial begins, the trial judge must conduct an inquiry to determine that (a) his request is made "clearly and unequivocally" and (b) he is "knowingly and intelligently" foregoing his right to counsel.

*Faretta* and *Snead,* therefore, do not affect the established rule that replacement of counsel during the course of a trial is a matter of discretion left to the trial court, *United States v. DiTommaso,* 405 F.2d 385, 393 (C.A. 4th Cir. 1968), *cert. denied,* 394 U.S. 934 (1969); and, absent a showing of cause, such a request is properly denied. *State v. Renshaw,* 276 Md. 259, 270 (1975); *Wright v. State,* 32 Md. App. 60, 62 (1976), *cert. denied,* 278 Md. 740 (1976).

In this case there was no showing of prejudice and the motion was properly denied.

*Judgments affirmed; costs to be paid by appellant.*